## THE BALTIMORE AND SUSQUEHANNA RAILROAD COMPANY *vs*. TILGHMAN G. COMPTON AND OTHERS.—*June*, 1844.

Where an inquisition was taken, returned, and ratified, according to law, upon proceedings by a railroad company, which found that a piece or parcel of land was wanted by the company for the construction of their road, and assessed the damages which the owner of the fee would sustain by the use and occupation of his land for the purpose aforesaid, at, &c., all questions having relation to the damage done by the location and construction of the road are terminated and concluded by such inquest.

And hence in an action brought by the owner of a fee against the company for having, after the construction of the road through his land, (the benefits of which construction to the plaintiff had been submitted to the jurors upon the inquisition aforesaid,) abandoned the same, and constructed the road anew in another location, off the plaintiff's land, the plaintiff cannot give evidence of the damage which would accrue to him from such original construction independent of the inquisition.

After a railroad company had constructed its road by authority of law, through the plaintiff's land, condemned for that object, they were authorised to alter the location of their road between two given points. They re-constructed their road, and abandoned that part which had been made through the plaintiff's land. HELD: that the authority derived from the legislature to alter the location, did not exempt the company from liability to the plaintiff for the loss sustained by him by reason of such abandonment.

Where a railroad company had constructed a road, then abandoned it in part, and changed the location *pro tanto*, a plaintiff through whose land the road orginally passed, having sustained no damage or injury in fact, by the alteration, cannot maintain an action for such change of location.

An inquisition to condemn land for the use of the B. and S. Railroad Company, in *Baltimore county*, out of the limits of the *City of Baltimore*, ought not to be held upon the warrant of a justice of the peace appointed for said city. *Per Baltimore county court.*

Under the act of 1827, ch. 72, resident jurors in the city of *Baltimore* may be summoned to act in any part of *Baltimore* county. *Ib.*

The description in an inquisition of land condemned, ought to be sufficiently certain. The omission to insert the name of the tract is not fatal. A

description is sufficient when it calls for stones, trees, planted boundaries, fixed objects, or where it takes for the beginning of the land intended to be described, any spot or point of beginning on land either conveyed to the company and recorded, or on land theretofore condemned by inquisition, recorded. *Ib.*

The description in an inquisition beginning for the land condemned at station No. 147, on the location of said railroad, and running thence to station No. 170, being 23 stations of 100 feet each in length, and occupying a space of 66 feet in width, is not sufficiently accurate to authorise its ratification. *Ib.*

Under the charter of the B. and S. Railroad Company, the inquisition for the condemnation of land should state that it was for the construction of the road, in that event the entire interest is condemned. *Ib.*

APPEAL from *Baltimore* County Court.

This was an action of *Trespass upon the case*, commenced on the 21st December, 1839, by the appellees against the appellants. The declaration of the plaintiff alleged :

1st COUNT. That whereas by an act of the General Assembly of *Maryland*, entitled "An act to incorporate the B. & S. R. R. Co." it was amongst other things enacted, that the subscribers of the stock therein mentioned, their successors and assigns, should be, and they were thereby declared to be, incorporated into a company, &c.; and amongst other things in the said act mentioned and enumerated, the president and directors of the said company were invested with all the rights and powers necessary for the construction and repair of a railroad from the *City of Baltimore* to some suitable point or points on the *Susquehanna river*, to be by them determined, not exceeding sixty-six feet wide ; and whereas by the said act of Assembly, it was also enacted, that the president and directors of said company, or a majority of them, or any person or persons authorised by a majority of them, might agree with the owner or owners of any land, earth, &c., or any improvements which might be wanted for the construction or repair of any of said roads, or any of their works, for the purchase or use and occupation of the same, and if they could not agree, or if the owner or owners, or any of them, be a *feme covert*, under age, *non compos mentis*, or out of the county in which the property might be, when such land and material may be want-

ed, application might be made to any justice of the peace of such county, who should thereupon issue his warrant, under hand and seal, directed to the sheriff of said county, requiring him to summon a jury of twenty inhabitants of said county, &c., to meet on the land, or near to the other property or materials to be valued, on a day named in said warrant, not less than ten, nor more than twenty days, after the issuing of the same; and if at said time and place any of said jurors summoned should not attend, &c., that before they should act as such, the said sheriff should administer to each of them an oath or affirmation, as the case might be, *that he would justly and impartially value the damages which the owner or owners might sustain by the use and occupation of the same, required by the company, and that the jury in estimating such damages should take into the estimate the benefits resulting to the said owner or owners from the conducting such railroad through, along, or near to, the property of said owner or owners, but only in extinguishment of the claim for damages,* and that the said jury should reduce their inquisition to writing, and should sign and seal the same, and that it should then be returned by said sheriff to the clerk, &c., and should be confirmed by said court at its next session, if no sufficient cause to the contrary be shown, and when confirmed should be recorded by the said clerk, &c.; but if set aside, the said court should direct another inquisition to be taken in the manner above prescribed, and that such inquisition should describe the property taken, or the bounds of the land condemned, and the quantity of duration of the interest in the same, valued for the company, and *such valuation, when paid or tendered to the owner or owners of said property, or his, her or their legal representatives, should entitle the said company to the estate and interest in the same, thus valued, as fully as if it had been conveyed by the owner or owners of the same;* and whereas, one *Thomas Compton,* late of *Baltimore* county, deceased, who was the father of the plaintiffs in this action, was, in his life-time, to wit, on the first day of March, in the year of our Lord one thousand eight hundred and thirty-one, and at the time of his death, at the

county aforesaid, seized in fee simple of a certain tract, or part of a tract, or parcel of land, situate, lying, and being in said county, called *Ridgely's Whim;* and whereas, on the day and year last aforesaid, at the county aforesaid, the president and directors of the said company, or a majority of them, did determine to locate and construct the *B. & S. R. R.* through, along, over and upon the said lands of the said *Thomas Compton;* and whereas, the president and directors of said company *could not agree* with the said *Thomas Compton,* for the lands so wanted for the location and construction of the said railroad, and the said *Thomas Compton* would not consent to the location and construction of the said road through, along, over, and upon his said lands, the president and directors of the said company caused the said railroad to be located, made, and constructed, through, along, over and upon the said lands of the said *Thomas Compton,* for the length of twenty-three hundred feet, and of the breadth of sixty-six feet, using and occupying therefor three acres one rood and thirty-eight perches of land, without his permission and consent, and without making or allowing him any compensation whatever therefor. And the said plaintiffs further say, that in the making and constructing of the said road through, along, over and upon the said lands of the said *Thomas Compton,* as aforesaid, the president and directors of the said company caused an embankment, consisting of earth, stone and gravel, to be made, of the length of two thousand feet, of the breadth of thirty feet, and of the height of ten feet, on one part of the said land, and that the president and directors of the said company also caused to be made, an excavation, of the length of two hundred feet, of the breadth of sixty-six feet, and of the depth of twenty feet, on another portion of said land, to the great damage and injury of said *Thomas Compton.* And the said plaintiffs further say, that afterwards, to wit, on the sixteenth day March, in the year eighteen hundred and thirty-one, at the county aforesaid, the *B. & S. R. R. Co.* made application to *Henry Brice, esquire,* a justice of the peace of the State of *Maryland,* in and for the city of *Baltimore,* to issue his war-

rant, under his hand and seal, directed to the sheriff of said county, requiring him to summon a jury of, &c., as the jury of inquest of damages in the matter of the said *Thomas Compton*, in pursuance of the said act of Assembly, and that the said warrant was accordingly issued, directed to *Henry Green, Esq.* the then sheriff of said county, and executed and returned to *Baltimore county court*, and that afterwards, to wit, on the 30th April, 1833, the said inquisition, so taken and returned, was quashed and set aside by the court, and the said sheriff was ordered and directed to summon a new jury, which was done, and a new inquisition taken, executed and returned, and confirmed by the said court, and that the said *Thomas Compton* was allowed one cent for his damages, and no more. And the said plaintiffs further say, that the *B. & S. R. R. Co.* continued from the 16th March, 1831, until the 1st September, 1838, at, &c., to use, occupy, possess and enjoy that portion of the said tract or parcel of land hereinbefore mentioned, and the railroad thereon made and constructed, without paying or allowing any compensation whatever therefor. And that said plaintiffs further say, that the said *Thomas Compton* departed this life on or about the 1st December, 1833, at, &c., and that his real estate descended to the said plaintiffs, as his heirs-at-law.

2ND COUNT. And the said plaintiffs further say, that afterwards, to wit, by an act of the General Assembly of *Maryland*, passed at, &c., entitled "A further supplement to an act entitled an act to incorporate the *B. & S. R. R. Co.*" it was enacted that the *B. & S. R. R. Co.* be, and they were thereby authorised to alter the location of their road between *Baltimore* and *Timonium* and *Owings' mills*, and in making such alteration have and exercise all the powers conferred by the act of incorporation for the purpose of originally constructing said road. And the said plaintiffs further say, that afterwards, to wit, on the 1st September, 1838, at, &c., the *B. & S. R. R. Co., in pursuance of the powers in them vested as aforesaid*, altered the location of their road between *Baltimore* and *Timonium, and abandoned all that part of their said railroad which had been located and constructed upon the lands of the said*

*Thos. Compton, as aforesaid, and made and constructed their said railroad from and off the lands of the said plaintiffs, and have ceased to use and travel upon that part of their said road which was originally made and constructed upon the lands of the said plaintiffs,* and have thereby entirely deprived the said plaintiffs of the benefits resulting to the said plaintiffs from the conducting of the said railroad through, along, and upon their said lands, to their great loss and injury, and without making and allowing to them, the said plaintiffs, any compensation whatever therefor. And the said plaintiffs further say, that since the passing of the several acts of Assembly hereinbefore mentioned, and since the condemnation of the lands of the plaintiffs, for the uses and purposes aforesaid, and since the original location and construction of the said railroad, and since the making of the said embankments and excavation hereinbefore mentioned, and since the making and constructing of their said railroad anew, between *Baltimore* and *Timonium,* and the abandonment of the original location and construction thereof upon the lands of the said plaintiffs, and the discontinuance of the travel thereon, to wit, on the 1st January, 1840, at, &c., and ever since, the *B. & S. R. R. Co.* well knowing the premises, but not regarding their own duties, nor the rights of the said plaintiffs, have not removed the said embankment, nor the earth, stone and gravel wherewith the same was made and constructed, nor have the *B. & S. R. R. Co.* filled up the said excavation hereinbefore mentioned, as they ought to have done, but have permitted the same to remain as made, to the great loss and damage of the said plaintiffs. By all which said premises, the said plaintiffs say that they are injured, and have sustained damage to the value of, &c.

To this declaration the defendants pleaded not guilty on the first count, on which issue was joined; and by consent of parties leave was given generally to offer special matter in evidence.

The defendants demurred to the second count, and the county court rendered judgment thereon for them. As to both

4     v.2

counts, however, all *"errors in pleading"* were waived by consent.

At the trial the jury found a verdict for the plaintiffs, of $1,643, with interest from the 25th May, 1841.

1st EXCEPTION. The plaintiffs, to support the issue on their part, offered in evidence the charter granted to the defendants by the General Assembly, and proved that they were the children and heirs-at-law of *Thomas Compton,* in whose life-time, at the instance of the defendants, the following proceedings took place for the condemnation of a part of a tract of land, belonging to him in fee, and lying in said county, about three and a half miles from the city of *Baltimore,* and at the time of this action owned by and in the possession of the said plaintiffs, as his heirs-at-law.

" THOMAS COMPTON : Inquisition, condemnation and confirmation of part of his lands, for the use of the *Baltimore and Susquehanna Railroad Company :*

" Be it remembered, that on the 11th April, 1831, *H. G.,* Esq. sheriff of *B. Co.,* in pursuance of an act of the General Assembly of *Maryland,* &c., entitled "An act to incorporate the *B. & S. R. R. Co."* made return to the court here of the fol·lowing warrant, inquisition and return, to wit :

" MARYLAND, *Baltimore county,* to wit :

"To *Henry Green, Esq.,* sheriff of said county: Whereas application has been made to me, a justice of the peace of, &c., by the *P. & D.* of the *B. & S. R. R. Co.,* stating that the said company cannot agree with *T. C.* for the purchase or use and occupation of a certain tract or parcel of land, lying in said county, belonging to the said *T. C.,* and contained within the following metes and bounds, courses and distances, to wit : Beginning for the same at station No. 147, on the location of said railroad, and running thence to station No. 170, being twenty-three stations of one hundred feet each in length, and occupying a space of sixty-six feet in width, containing three and a half acres, and which said tract is wanted by the said company for the construction of a railroad from the city of *B.* towards the *S.* river, under and in conformity to the provisions

OF MARYLAND. 27

B. and S. Rail Road Co. vs. Compton and others.—1844.

of an act of Assembly, passed, &c., entitled "An act," &c.
Now, therefore, I, the said justice, under and by virtue of the
said act and application aforesaid, do hereby authorise and
command you to summon a jury of twenty inhabitants of said
county, not related to said *T. C.*, nor in any way interested,
to meet on the land, on Monday the 28th day of March instant,
the date hereof. Herein fail not, and this shall be your war-
rant and authority therefor. Witness my hand and seal, this
16th March, 1831. HENRY BRICE, (Seal.)"

" I hereby certify and return, that by authority and in pur-
suance of the commands of the within warrant to me directed,
I summoned *R. D.*, &c., being a jury of twenty inhabitants of
said county, not related to the within named *T. C.*, nor in any
wise interested, to meet on the lands on Monday the twenty-
eighth day of March, 1831, at which time and place did ap-
pear the above named persons, being the jurors aforesaid, from
which pannel the president of the company did strike off, &c.
leaving twelve jurors to act as a jury of inquest of damages, to
wit, *R. D.*, &c.; and before the said jurors proceeded to act
as such, I administered to each of them the following oath or
affirmation: (as they respectively swore or affirmed,) "You do
swear, (or, solemnly, sincerely and truly declare and affirm,)
that you will justly and impartially value the damages which
*T. C.* will sustain by the use or occupation of the tract of land
required by the *B. & S. R. R. C.*, for the construction of a
railroad from the city of *B.* towards the *S.* river." Whereupon,
having shown to the said jury the tract of land within descri-
bed, and directed the said jury to take into the estimate of
damages the benefits resulting to the said *T. C.* from the pas-
sage of such railroad through and along said property, but only
in the extinguishment of the claim for damages, the said jury
did reduce their inquisition to writing, and did sign and seal
the same in manner and form as by the original of the said in-
quisition, hereto annexed, and made part of this return, doth
appear. Whereupon, I hereby return the said inquisition to
*William Gibson*, the clerk of the said county, as directed by the
act of Assembly, entitled "An act to incorporate the *Baltimore*

*and Susquehanna Railroad Company.*" Witness my hand and seal.                    HENRY GREEN, (Seal,)

*Sheriff of Baltimore County.*"

INQUISITION. *Maryland, B.* county: An inquisition taken at the said county, on the 28th March, 1831, before *H. G.,* sheriff, &c., on the oath of *R. D.,* &c., who, having been summoned by said sheriff, and sworn justly and impartially to value the damages which *T. C.* will sustain by the use and occupation of that piece, parcel or tract of land, owned by the said *T. C.,* situated in said county, being part of a tract called ——, and contained within the following metes and bounds, courses and distances, to wit: Beginning for the same at station No. 147, on, &c., as before described in the justice's warrant; which said piece, parcel or tract, is wanted by the *B. & S. R. R. C.* for the use of a railroad from the city of *Baltimore* towards the *Susquehanna* river, upon their oaths do say, that the said *T. C. is not entitled to any damage* by the use and occupation aforesaid. In testimony whereof, we, the subscribers, being the jurors aforesaid, have hereunto set our hands and seals, on the day and year first above written.

RICH'D DORSEY, (Seal.) &c.

I do hereby certify and return to the clerk of *Baltimore* county court, the within inquisition, taken before me, on the oaths of the jurors within named, as herein set forth and reduced to writing, and signed and sealed by the said jurors, in my presence, agreeably to the directions of the Act of Assembly, entitled, an act to incorporate the *Baltimore* and *Susquehanna* Railroad Company.          HENRY GREEN,

*Sheriff of Balto. County,* (Seal.)

Which said inquisition was quashed by *Baltimore* county court on the motion of the said *T. C.*

1st. The court is of opinion that the issuing of the warrant by *H. B.,* he being "a justice of the peace of the State of *Maryland,* in and for the city of *Baltimore,*" was irregular, and affords proper ground for quashing the inquisition.

2nd. The court is of opinion that the summoning of jurors

resident in the city of *Baltimore*, is not contrary to law, for the purposes contemplated by the act of 1827, chap. 72, and within its intent and meaning, jurors may be taken from any part of the entire county, of which county, for that purpose, the city of *Baltimore* is a part. The jurors summoned must be disinterested within the intent and provisions of the said act.

3rd. The court is of opinion that the description of the land condemned is not sufficiently certain, but that the omission to insert the name of the tract of land is not a fatal defect. The description would have been sufficiently accurate if it had called for stones, trees, or any boundaries planted, or other fixed objects, or if it had taken for the beginning of the land intended to be described, any spot or point of beginning on land either conveyed to the railroad company, and therefore rendered certain by the record of the deed of conveyance, or on land theretofore condemned by inquisition, for the use of the company, if the inquisition was recorded.

4th. The court is of opinion, also, that the inquisition ought to have set forth that the land was condemned for the use of the company, *for construction*, which would have been sufficient, but the statement of that fact in the warrant, does not, in the opinion of the court, comply with the requisition of the law, that it should appear in the inquisition.

5th. The court is of opinion that it is not necessary for the inquisition, in order to comply with that part of the law which requires the jury to state "the quantity of duration of interest," to set forth whether the land is condemned in fee, for life, or years, or otherwise, but that the inquisition will be good if it sufficiently appear on its face, as it will do if the land be stated to be wanted "for construction" of the railroad, that the entire interest in the land condemned is intended to be taken.

The county court, on the 30th April 1833, ordered and decreed, that the sheriff of *Baltimore* county summon a jury of twenty inhabitants of said county, not related to the said defendant, nor in any wise interested in the said matter, to meet on the said lands of the said *T. C.*, required by the said plain-

tiffs for the uses, purposes and operations of the said plaintiffs, or near thereto, on the 18th day of May next, and if, at the said time and place, any, &c., from which panel each of the said parties, his or their agent or attorney, may strike four jurors, and in the absence of the said parties, or either of them, or their agent or attorney, the said sheriff shall strike four persons for each or either of said parties from said panel, and the remaining twelve jurors shall act as the jury of inquest of damages in the said cause, but before they act as such, the said sheriff shall administer to each of them an oath or affirmation, as the case may be, that he will justly and impartially value and assess the damages which the said defendant will sustain by the use and occupation of his lands and premises by the said plaintiffs, and the said jury, in estimating such damages, shall take into the estimate the benefits resulting to the said defendant from constructing such railroad through, along or near to the property of said defendant, but only in extinguishment of damages, and the said jury shall sign and seal their said inquisition, and deliver it to the said sheriff, and the said sheriff shall forthwith return the same to this court.

The inquisition returned by the sheriff under the order of *Baltimore* county court, after reciting the proceedings, stated that the jurors were sworn justly and impartially to value and assess the damages which *T. C.* will sustain by the use and occupation, for the purpose of construction of the railroad, of that piece, parcel or tract of land owned by the said *T. C.*, situated in said county, being part of tract called "*Ridgely's Whim,*" or by whatsoever name or names the same may be called or known, and contained within the following metes and bounds, courses and distances, to wit: beginning for the same at a stone placed in the ground, forty-seven feet from a *Hickory tree*, being on the boundary line of said tract, marked with three notches, and at a station stake numbered 147, on the line of the *B. & S. R. R.*, and running thence, north 26° 30' east, one hundred feet, thence north 18° 30' east, one hundred feet, thence north 7° 30' east, seven hundred

feet, thence north 5° 30′ east, one hundred feet, thence north 1° 30′ east, one hundred feet, thence north 2° 30′ west, one hundred feet, thence north 8° 30′ east, one hundred feet, thence north 14° west, one hundred feet, thence north 18° west, one hundred feet, thence north 19° west, one hundred feet, thence north 21° west, one hundred feet, thence north 25° west, one hundred feet, thence north 23° west, one hundred feet, thence north 14° 30′ west, one hundred feet, thence north 3° west, one hundred feet, thence north 4° east, one hundred feet, thence north 3° west, one hundred feet, to station No. 170, on the line of said road, supposed to be the termination of the land owned and occupied by the said *T. C.*, containing, by the above described courses, and a constant width of 66 feet, three acres, one rod, and thirty-eight perches of land, more or less, which said piece, parcel or tract is wanted by the *B. & S. R. R. Co.* for construction of a railroad from the city of *B.* towards the *S.* river, upon their oaths do say, that they value and assess the damages which the said *Thomas Compton* will sustain by the use and occupation aforesaid, at the sum of *one cent.* In testimony whereof, we, &c.

The inquest was ratified and confirmed on the 6th November 1833.

This plaintiffs further offered in evidence, that under and by virtue of such condemnation, the said defendants took possession of the parcel of land in said proceedings described, and proceeded to make an excavation and embankment thereon, and completed upon the same their railroad, and used and travelled said road; and further offered in evidence from the printed statute book, a supplement to the charter of the defendants, granted by the General Assembly at December session 1835, chap. 371, in pursuance of the provisions of which, the defendants, on the 1st January 1838, abandoned all that portion of their railroad which had been so as aforesaid constructed on the land of said *T. C.*, and took away the rails therefrom, and wholly ceased to use and travel such part of their said road; and further offered to prove by *Henry McElderry, John W. Ward* and *William McLenahan,* witnesses produced

and sworn on their part, that, at the request of the said *T. C.*, and prior to the construction of the said road upon his land, they had examined said land, and had estimated the damage to accrue to him from such construction at the sum of $1,100, and that, in their judgment, the damage done to the land by the said road, as originally constructed, amounted to that sum, for the purpose of proving which damage, said evidence was offered.

To the admissibility of which evidence, the defendants objected, upon the several grounds following:

The defendant, by its counsel, objects to the admissibility of the evidence offered by the plaintiffs, to prove the damage done to their land by the original location of the defendants' railroad.

1st. Because the action (as appears from the plaintiffs' declaration,) is brought to recover damages for changing the location of the railroad, which, heretofore, was constructed through the land of the plaintiffs, and if they are entitled to recover any thing, the measure of damages is the injury inflicted by such change, and not what may have been suffered from the first location of the road.

2nd. Because, if proof is admissible of the damage sustained by the original location and construction of the railroad of the defendant upon the lands of the plaintiffs, then that the inquisition of damages upon said land, in the lifetime of their ancestor *T. C.*, taken and returned to *Baltimore* county court, and by it confirmed, and which has been given in evidence by the plaintiffs, is conclusive as to the amount of such damages.

3rd. Because, if proof of such damage, other than, or in addition to, said inquisition, is admissible, the evidence so offered is not the best which the nature of the case admits.

The court (R. B. Magruder, A. J.,) refused to sustain said objections, and the evidence was admitted accordingly, and went to the jury. The defendants excepted.

2nd Exception. The defendants then, to support the issue on their part, offered in evidence, that on the 1st January 1838,

under the supplement to their charter as proved, they had re-constructed off the lands of the plaintiffs, and at the distance of about two hundred yards from its old location thereon, all that portion of their rail road which had been originally locat-ed on the lands of the plaintiffs, and had completed and were using and travelling the same, and that said rail road, as so re-constructed, was of equal benefit and convenience to the said plaintiffs, as it had been where originally constructed ; and further proved that the parcel of land described in the proceedings of condemnation, given in evidence by the plain-tiffs, had been in the possession of the plaintiffs from the time of the re construction of said rail road, and was claimed and admitted to belong to them ; and further gave in evidence, that the same, at an expense of not more than five hundred dollars, might be rendered as valuable for cultivation, as it had been before the original construction of the rail road thereon.

The defendants then prayed the court to instruct the jury as follows :

1st. That the plaintiffs are not entitled to recover in this action, because the altered location of the rail road through the land of the plaintiffs, though it has removed the same from said land, has been by authority of, and pursuant to, and with-in the provisions of the act of Assembly of 1835, ch. 371, entitled a further supplement to the act entitled, an act to incorporate the *B. & S. R. R. Co.*

2nd. That the plaintiffs are not entitled to recover in this action for the removal from their land of the rail road of the defendant, unless they find some actual damage to the plain-tiffs, growing out of such removal.

3rd. That if the plaintiffs are entitled to recover in this action, the measure of the damages to be awarded them, is the damage sustained by them, in having the rail road of the defendants in its present position, instead of having it upon its original location on their land, and that if the jurors find the plaintiffs to have sustained no injury from such change, then that they are not entitled to recover.

The plaintiffs likewise prayed the court for other instructions, as follows :

The plaintiffs ask the court's instruction to the jury, that they are entitled to recover the damage done to the land and other property of the plaintiffs, by the original location of the defendants road over the same, and the abandonment of such location at the time of such abandonment, provided, the jury shall find such damage, location and abandonment, and also, that the present location of said road is on the eastern side of Jones' Falls, entirely off of the plaintiffs' land, without any deduction whatever for the benefit or advantage which the jury may find from the evidence, the plaintiffs derive from the present location of defendants road.    The plaintiffs in this case claim, as a measure of damages, to recover what from the evidence in the cause the jury may find to have been the value of the land originally taken under the condemnation offered in evidence by the plaintiffs, and such other of the land as was directly injured by the making of said road, at the time the defendants totally abandoned the said location, and made and used the one on the western side of the Falls off the plaintiffs land, if the said land had never been taken by the defendants, less what the jury may find to be the value to the plaintiffs of said lands at the time of such final abandonment ; and for the purpose of proving said facts, they offered in evidence to the jury, that twenty acres of the said land, worth $200 an acre, were by said first location, and the making of said road, ren‧ dered totally valueless, except for the purpose of said road, and as evidence thereof, offered to prove by a competent witness, *Capt. De La Roche*, as civil engineer, who had carefully examined said part of said road, that to restore the said land to its said original value of $200 an acre, would cost at least $5,000.

The court (R. B. Magruder, A. J.) refused to instruct the jury as prayed, and gave the following direction :

If the jury shall find that the defendants originally located their rail road through the lands of the plaintiffs, and made the embankments and excavations, and completed and used the

said road in the manner set forth in the evidence, and that defendants then abandoned the said road, and shall also find that the present location of the road is on the eastern side of Jones' Falls, entirely off the plaintiffs land, then the plaintiff are entitled to recover the damage done to the land and other property of the plaintiffs, by the original location of the defendants' road through and over the same, without any deduction whatever for any benefit or advantage which the jury may find from the evidence, the plaintiff derived from the present location of the road.

And the court further instruct the jury, that the price paid by the plaintiffs for the benefit of the road, as originally located, or the amount which was charged to, or assessed upon, the plaintiffs, at the time of the taking of the inquisition given in evidence in this cause, as benefit resulting to the plaintiffs from the location of the road through his land, and which was deducted by the jury who made the inquisition from the whole amount of damage done to the land and other property of the plaintiffs by said original location, if the jury shall find from the evidence such price or assessment and deduction, together with legal interest thereon, from the time of the abandonment of the road by the defendants, is the proper rule to regulate the jury in estimating the damages sustained by the plaintiffs.

To which direction, as given by the court, and the refusal of the prayers offered on their part, the defendants excepted.

3RD EXCEPTION. After the parties to this cause had gone before the jury under the direction of the court, as stated in the second bill of exceptions, the defendants, by their counsel, insisted that the jury were entitled to take into their estimate of damages, the sum for which the lands of the plaintiffs, occupied by the road, as originally constructed, might be rendered as valuable for cultivation as they had been prior to such original construction, and were not bound to consider said land as totally destroyed, to which the plaintiffs objected as contrary to the true construction of the direction aforesaid, and thereupon the court decided, that by the true construction of said direction, the jury were bound to consider said land as wholly destroyed. The defendants excepted.

The judgment being against the *Baltimore and Sus. R. R. Company*, they prosecuted the present appeal.

The cause was argued before BUCHANAN, C. J., DORSEY, CHAMBERS and SPENCE, J.

By B. C. PRESTMAN and CAMPBELL for the appellants, and By T. P. SCOTT and REVERDY JOHNSON for the appellees.

DORSEY, J., delivered the opinion of this court.

The testimony offered by the plaintiffs, in the first bill of exceptions on the part of the defendants, to prove the damage done by the location and construction of the rail road through their lands, was obnoxious to the objection taken to its reception. All questions in relation to such damage were terminated and concluded by the inquisition previously found by the jury. They formed no part of the issue then on trial. The question to be tried by the jury empannelled in the county court, was the extent of the injury which resulted to the plaintiffs by the abandonment and discontinuance of the railway on their lands, and its location and construction on the lands of another person. The county court therefore erred in admitting the testimony thus objected to by the defendant.

A majority of this court are of opinion that the county court were right in rejecting the defendant's first prayer, in his second bill of exceptions; that the plaintiffs could not recover, inasmuch as the removal of the railway complained of was made under the authority and pursuant to the provisions of the act of Assembly of 1835, ch. 371. From this opinion I have dissented; but, as no reasons have been assigned in support of it, I do not deem it necessary to state the grounds of my dissent.

The defendant's second prayer in the same exception, to wit: "that the plaintiffs are not entitled to recover in this action, for the removal from their land, of the rail road of the defendant, unless they find some actual damage to the plaintiffs growing out of such removal;" and his third prayer, to wit: "that if the plaintiffs are entitled to recover in this action

the measure of the damage to be awarded them, is the damage sustained by them in having the rail road of the defendant in its present position, instead of having it upon its original location on their land; and that if the jurors find the plaintiffs to have sustained no injury from such change, then that they are not entitled to recover;" we think both ought to have been granted: and that in failing to do so, the county court erred.

In the third bill of exceptions, the county court was right in its construction of the instruction it had given to the jury as stated in the second bill of exceptions. The error of that court consisted in its giving the instruction, not in its interpretation of it.

This court concur with the county court in its construction of its instruction as stated in the third bill of exceptions. And a majority of this court approve of the refusal of the county court to grant the defendant's first prayer in his second bill of exceptions. But this court, dissenting from the county court's decision in the first bill of exceptions, and in its refusal to grant the defendants' second and third prayers in his second bill of exceptions, and from its instruction given in that exception to the jury, reverse its judgment.

LET A PROCEDENDO ISSUE.