KINEALY et al., *Appellants*, v. THE ST. LOUIS, KANSAS CITY & NORTHERN RAILWAY COMPANY.

1. **Railroads**: DAMAGES: CHANGE OF ROUTE: WITHDRAWAL OF TRAINS: VIOLATION OF CHARTER A QUESTION FOR THE STATE ONLY. In an action by a private citizen to recover damages from a railroad company, sustained in the depreciation of his property by such company's discontinuance of its old route for the passage of its *through* trains, and its construction of a new route for that purpose, *Held*, not competent for the citizen to raise the question that such acts of the company were in violation of its charter; such question could only be raised in an action brought by the State. (Following *Martindale v. R. R. Co.*, 60 Mo. 510.)

Per Hough, J.—It was competent, in such action, to inquire into the right of the company to alter the number or character of the trains formerly run over the old route; but its right so to do was clear, if it continued to furnish the public with sufficient accommodation for freight and passengers.

2. ———: ———, MUST BE SPECIAL AND PECULIAR, WHEN. Unless such depreciation in the value of the property was special and peculiar to the party complaining, not shared by the other members of the commmunity, he would have no right of action.

3. ———: CONTRACT OR DUTY TO MAINTAIN AND OPERATE ITS ROAD, WHEN NOT IMPLIED IN FAVOR OF INDIVIDUAL CITIZEN. Where the construction and maintenance of a railroad are authorized by legislative enactments solely for the public benefit, no contract or duty to maintain its road and to continue to run its trains, will be implied, on the part of the company, in favor of a private citizen who has bought and improved lots on the line of the road under the belief that it will continue to be maintained and operated.

## Appeal from St. Louis Court of Appeals.

Plaintiffs' petition alleged the incorporation of the North Missouri Railroad Company by special act, approved March 13th, 1850, for the purpose and with the power of constructing and operating a railroad from St. Louis to a point in the northern boundary of the State; that, by an amendatory act, approved January 7th, 1853, said company was further empowered to extend and operate its road from St. Charles to St. Louis, provided all of said intended road should be completed prior to January 8th, 1861; that, prior to this last date said company constructed its road from St. Charles to North Market street, in the city of St. Louis, which street it established as its terminus; that this road passed through the lands of Jennings, in the county of St. Louis, and upon said lands the company erected a depot, known as Jennings station, which is made a principal and ordinary stopping place for all trains running on its road, for taking on and putting off freight and passengers, and which it proclaimed at all times thereafter to be such a depot and stopping place; that, afterwards, on the 22nd day of February, 1866, one of the plaintiffs, being the wife

of the other, relying on the establishment of said depot, and the operation of said road, published and proclaimed as aforesaid, by said company, and for the obtaining the advantages and use of said depot and of the passenger and freight trains run on said road, purchased certain parcels of land situated within a quarter of a mile of said depot, and which derived their chief value from their vicinity to the same, and erected thereon a dwelling house and outbuildings; that, on the 1st day of October, 1868, the said company executed a mortgage of its equity of redemption in said road and franchises, and on the 26th day of August, 1871, by deed delivered on that day, the mortgagees claiming authority under said mortgage assumed to convey said equity of redemption to one Jessup; that, on the 2nd day of January, 1872, defendant was incorporated as a railroad company under the general law, and set forth in its articles of incorporation that the railroad it desired to maintain and operate was that theretofore constructed by the North Missouri Railroad Company, and about two miles of railroad in the city of St. Louis between Plum street and a point in said railroad at North Market street, and such other tracks as might be deemed necessary for connections with the bridge then being built at said city over the Mississippi river; that before any part of these portions of railroad was constructed, said Jessup conveyed to defendant the equity of redemption acquired by him in the said franchises and property of the North Missouri Railroad Company, and no further or other interest therein; that defendant, thereupon, took exclusive possession of said North Missouri Railroad, and operated it as its own exclusive property; that, on the 5th day of July, 1876, defendant, while still operating said North Missouri Railroad, without having any other or further powers than those stated, constructed a new track from the intersection of Fourteenth street and the Pacific Railroad to Ferguson station, a point on the North Missouri Railroad ten miles northwest of said terminus at North Market street, no part of which track ap-

proached within two miles of Jennings station or North Market street, or of any part of the North Missouri Railroad between said street and station; that, thereupon, defendant withdrew from its track between said street and station the passenger and through freight trains that theretofore ran over said track, and converted said portion of its railroad into a local freight line, and ceased to run any passenger or freight train from or to the western or northern terminus of said North Missouri Railroad, or from or to any point on said railroad, north or west of Warrenton, about seventy-five miles from the city of St. Louis, whereas the main road extended at least 200 miles north and west of Warrenton; that the withdrawal of said trains was unlawful and unauthorized, and that in consequence thereof the value of plaintiff's said real estate had been greatly depreciated, and that she had been damaged in the sum of $6,000, for which judgment was asked.

To this petition defendant demurred, assigning the following grounds: 1 Because said petition does not state facts constituting a cause of action against the defendant. 2. Because said petition does not aver that the plaintiffs, or either of them, ever made any investment or expended any money upon the faith of any act, representation or agreement of the defendant. 3. Because said petition does not charge that the defendant has abandoned, or threatened to abandon, any portion of its line of railroad, or that it has ever failed to furnish necessary and reasonable accommodation for the public upon and over every portion of its railroad in the petition described.

This demurrer was sustained, the plaintiffs refused to plead further, final judgment on the demurrer was rendered for defendant, from which plaintiffs appealed to the St. Louis court of appeals, where the judgment was affirmed, *pro forma*, and plaintiffs appealed to this court.

*M. Kinealy* for appellants.

The respondent, by its demurrer, admits that it has constructed a new line from Ferguson station, ten miles from St. Louis, to the latter city, which it uses for its through freight and passenger trains; and for those trains has abandoned what was formerly its main line, from Ferguson to St. Louis, ten miles in length; that this latter line passes by appellant's land near to which a depot is located, and that in consequence of the abandonment of the main line, the appellant's property has depreciated $6,000. If this abandonment has been made without authority of law, the appellant is entitled to recover her damages. *B. & S. R. R. Co. v. Compton*, 2 Gill 36; *Jackson v. Jackson*, 16 Ohio St. 168; *Little Miami R. R. Co. v. Naylor*, 2 Ohio St. 235; *N. O., &c., R. R. Co. v. Moye*, 39 Miss. 374; *Atkinson v. Marietta & C. R. R. Co.*, 15 Ohio St. 36; 1 Addison on Torts, 18; *Turnpike Co. v. Hosmer*, 12 Conn. 365; *Lackland v. The N. M. R. R. Co.*, 31 Mo. 184; *Carlin v. Paul*, 11 Mo. 32; *Lackland v. The N. M. R. R. Co.*, 34 Mo. 259; *Smith v. Boston*, 7 Cush. 254.

*Wells H. Blodgett* for respondent.

1. The question whether the defendant, in constructing its new line and withdrawing its through trains from the old route past Jennings station, has acted in violation of its charter, or the law under which it was created, cannot be considered or determined in this proceeding. *Martindale v. K. C., St. Jo. & C. B. R. R. Co.*, 60 Mo. 510; *Land v. Coffman*, 50 Mo. 243; *Shewalter v. Pirner*, 55 Mo. 218; *Myers v. Croft*, 13 Wall. 291; *Smith v. Sheely*, 12 Wall. 358; Angell & Ames on Corp., (10 Ed.) § 777. If it were true that in doing the acts complained of the defendant passed the exact line of its power, it belongs to the government of the State to exact a forfeiture of its charter, and it is not for the courts, in a collateral way, to determine the question of misuser. *Chambers v. St. Louis*, 29 Mo. 543.

2. The plaintiff could not, upon the allegations in her petition, maintain an action against the defendant to recover such damages as she may have sustained in common with every other citizen of the same community. *Proprietors of Quincy Canal v. Newcomb*, 7 Met. 276; *Proprietors of Locks and Canals v. N. & L. R. R. Co.*, 10 Cush. 389; *Smith v. City of Boston*, 7 Cush. 254; *Paine v. Partrich*, Carthew 191; *Hubert v. Groves*, 1 Esp. 148. 3. The action could not be maintained upon the theory that there was a breach of an implied contract between the plaintiff and defendant. Field on Damages, p. 35.

SHERWOOD, C. J.—Whether the defendant acted in violation of its charter, when constructing its new and with-

1. RAILROADS: damages: change of route: withdrawal of trains: violation of charter a question for the State only.

drawing its trains from its old route past Jennings station, is a question we do not propose to discuss, as it is a question which can only be raised by the State, except where such collateral inquiry, by a private citizen, is expressly granted by law. *Martindale v. R. R. Co.*, 60 Mo. 510, and cases cited.

But disregarding any consideration of this nature, plaintiffs' standing in court is not thereby bettered; for

2. ———: damages must be special and peculiar, when.

they do not allege that the injury complained of is one special and peculiar to the party complaining; an injury, in short, not shared by the other members of the community. For aught that appears in the petition, every lot owner in Jennings station, every owner of real estate in the vicinity, is as much damaged as is the wife of plaintiff by the withdrawal of defendant's trains and the consequent depreciation in the value of real estate. It is well settled that where a highway is altered, obstructed or altogether vacated, no action will lie except by him who "has greater trust or incommodity than every other man has." *Holman v. Townsend*, 13 Met. 297; *Stetson v. Faxon*, 19 Pick. 147, and cases cited; *Brainard v. R. R. Co.*, 48 Vt. 107. In the case last

cited, where a plank road had been located through plaintiff's land, which route was afterwards condemned and applied to the use of a railroad company, it was said, that "the injury that the plaintiff sustained by the loss of the use of the plank road, is one that he sustains in common with the whole public. Every person who was accommodated by the use of the plank road sustains an injury of the same character and kind, different only in degree, whether he lives upon the line of the road or elsewhere. The same injury would result from the abandonment of the road, or from its destruction from any cause. All the authorities agree that for such injuries damages are not allowed." But in the same case it was held that the plaintiff was entitled to damages resulting from a destruction of the plank road, because, owing to such destruction, he was compelled to construct a private road from his building to the public highway, thereby sustaining an injury not common to the public generally, but one peculiar to himself. To the same effect are *Proprietors of Quincy Canal Co. v. Newcomb*, 7 Met. 276; *Smith v. City of Boston*, 7 Cush. 254; Angell on Highways, §§ 283, 285, and cases cited; *Stone v. R. R. Co.*, 68 Ill. 394; *Proprietors of Locks and Canals v. R. R. Co.*, 10 Cush. 385.

In Ohio a different rule prevails as to the alteration of a highway, but it is there recognized as a clear exception to the rule prevalent elsewhere; but even in that State it is held that no right of recovery exists where the plaintiff's property was not taken, and where the alteration merely rendered the road less convenient for travel, without directly impairing his access to the road from the improvements on his land. *Jackson v. Jackson*, 16 Ohio St. 168. So that even in that State the doctrine of a special injury in order to a right of recovery is recognized as fully as in the Vermont case, *supra*. In *R. R. Co. v. Naylor*, 2 Ohio St. 235, the railway had been located and operated on a certain street for some time, but the company, without authority of law, re-located their road, and in so doing, ran

within a few feet of the premises of Naylor and in front of his house, used both for a dwelling and a grocery, thus impairing the value of his house as a dwelling and ruining it as a grocery stand; and he was held entitled to recover. But, confessedly, that right of recovery was based upon the ground of the direct and special injury sustained; for this was the very gravamen of the action.

The case of *R. R. Co. v. Compton*, 2 Gill 20, so strongly relied upon by plaintiffs as being directly in point in their favor, is not an elaborately considered case, nor are any arguments or reasons given, or authorities cited for the conclusions reached; but still I think it will, perhaps, be found that even that case proceeds upon the general theory heretofore announced, of an injury to the party complaining different from that suffered by the rest of the community. For it is expressly said in the opinion: "The question to be tried by the jury empaneled in the county court was the extent of the injury which resulted to the plaintiff by the abandonment and the discontinuance of the railway on their lands, and its location and construction on the lands of another person." This language would seem to indicate that the plaintiffs desired legal redress for injuries peculiar to themselves, as land owners, in the deprivation of facilities theretofore enjoyed by them, by reason of the withdrawal of the railway from their lands. If this is the theory of that case, the correctness of the conclusion arrived at cannot be questioned. But the case is very obscurely and unsatisfactorily reported, and if it is to be understood in a different way from that I have stated, it is certainly at variance with the principle asserted in the cases already cited; and no reason is seen why the same doctrine should not control in relation to actions by private individuals for the abandonment of railway routes, as well as for the abandonment of any other highway whatsoever. If the same principle is to control in each class of cases, then it is quite clear that plaintiffs, by failing to allege an injury sustained special in its nature to themselves, have failed to

state any ground of recovery; and no case, except, perhaps, that in Maryland, even remotely intimates a contrary view; the cases cited from our own reports, and the one cited from Mississippi, certainly do not. I take it, that there is a wide difference between a private individual bringing suit against a railway company for special damage for obstructing the street in front of his lot, and thus cutting off every opportunity of ingress or egress, as in the *Lackland* case, and the more recent one of *Tate v. R. R. Co.*, 64 Mo. 149, and the bringing of a similar suit where no special damage is alleged, because a railway company has discontinued its trains or abandoned its road. Whatever redress is to be afforded under the last mentioned circumstances can be obtained only by the authority which granted its franchises to the derelict company. *Atty. Genl v. Ry. Co.*, 36 Wis. 467.

Again, there was no contract between the railway company and plaintiffs, either express or implied, that the 3. ——: contract company should continue to maintain its road or duty to maintain and operate or run its trains. "Whenever an action is its road, when not implied in favor brought for a breach of duty, the party of individual citizen. bringing it must show that he has an interest in the performance of the duty, and that the duty is imposed for his benefit, and when the duty is imposed for the benefit of another, or for the public benefit, and his own advantage is merely incident, and no part of the design of the statute, no such right is created as forms the subject of an action." Field on Damages, § 39. Here it is evident that the construction of the road, and its maintenance, were authorized by legislative enactment, solely for the "public benefit," and not for the benefit of any individual composing the public. So that, as between the plaintiffs and the defendant company, there is neither breach of contract nor breach of duty, and, consequently, no right of action. And this case, therefore, so far as it concerns plaintiffs, stands precisely as if they had bought lots and built thereon contiguous to any other public improvement, on the faith

of the continuance of such improvement. A recent writer observes in reference to the discontinuance of such improvements: " There is no contract with surrounding property owners that a public improvement shall always exist, as at present, and no damages will be allowed for its discontinuance, notwithstanding improvements may have been made on the supposition that they will remain, and notwithstanding property has been thereby enhanced in value." Mills on Eminent Domain, § 317 ; *The Brooklyn Park Commrs. v. Armstrong*, 45 N. Y. 234. For the foregoing reasons we are of opinion that the judgment should be affirmed. All concur except HOUGH, J., who concurs merely in the result.

AFFIRMED.

PER HOUGH, J.—Prior to the year 1876, the defendant's road terminated at North Market street, in the city of St. Louis. In July of that year, defendant constructed a branch road extending from Ferguson station, ten miles northwest of the terminus at North Market street, to Fourteenth street at its intersection with the Pacific Railroad, in said city of St. Louis. Thereafter, the defendant ran its through passenger and freight trains to and from the city of St. Louis over the branch terminating at Fourteenth street, and ceased to run any passenger or freight trains over that portion of its road between Ferguson station and North Market street, other than those which ran no further than Warrenton, a town on the main line of defendant's road, seventy-five miles distant from St. Louis. Nothing is said as to the character of the connection made by these trains with the through trains at Ferguson station or at Warrenton. In February, 1866, while North Market street was the only terminus of the defendant's road in the city of St. Louis, the plaintiff Sarah J. Kinealy, wife of plaintiff Michael Kinealy, purchased two lots within a quarter of a mile of Jennings station, a station on said road situated between Ferguson station and North Market street, and erected on

said lots a dwelling house. Plaintiff alleges that the withdrawal of the through passenger and freight trains from that portion of the road between Ferguson station and North Market street was unlawful and unauthorized, and that by reason thereof her said lots at Jennings station were depreciated in value, and that she is thereby damaged in the sum of $6,000, for which she prays judgment.

There is no allegation that the defendant, as a common carrier of passengers and freight, ever failed or refused to furnish ample and proper accommodations for passengers or freight seeking transportation to or from Jennings station, and that by reason of such failure the plaintiff has been damaged. The only complaint is, that all the through trains over defendant's road do not enter the city of St. Louis by the way of Jennings station, and the plaintiff's property has been thereby rendered less valuable. Whether the defendant had a right to construct the new route from Ferguson station to Fourteenth street, is a question which can only be raised by the State, and so far as the plaintiff in this action is concerned, it must be regarded as having been lawfully constructed. Whether the defendant had a right to alter the number or character of the trains formerly run over that portion of its route between Ferguson station and North Market street, is a question which may be inquired into in this suit. That it could so alter them, provided it continued to furnish the public with sufficient accommodations for freight and passengers, is a proposition too well settled to require the citation of any authorities to support it; and all damages, if any, resulting from that cause alone, is *damnum absque injuria*. There is no question of abandonment in the case, and it is wholly unnecessary, therefore, to inquire into the effect of a removal, or non-user, by defendant of its road between Ferguson station and North Market street. The facts stated in the petition show that the road between the points named has not been abandoned, but that it is still maintained and operated. The number and character of the

trains, only, have been changed. Precisely the same change of trains could have been made if the branch from Ferguson station to Fourteenth street had never been built, provided such change did not deprive the public of reasonable and necessary accommodations. I, therefore, concur in affirming the judgment of the court of appeals.