## SUPERIOR COURT OF BALTIMORE CITY

Filed April 23, 1894.

BALTIMORE BELT RAILROAD COMPANY

VS.

HENRY E. BALTZELL ET. AL.

RITCHIE, J.—

Henry E. Baltzell is the owner in fee of a lot of ground situated on the corner of Mount Royal avenue and Dolphin street and improved by a brick building, the first floor of which is intended to be used as a store and the upper stories are occupied as a dwelling. He owns to the centre of each street, his title between the build-ing line and the centre of each street being subject to the public easement of these respective highways. The Belt Railroad Company requires and has undertaken to condemn of this property for the construction of its proposed tunnel, a triangular parcel of ground lying under the bed of these two streets and within the angle formed by the intersection of their centre lines. This parcel runs about eighty feet along the centre line of Dolphin street, about seventy feet along that of Mount Royal avenue, and its base line is one hundred and seven feet.

The statute under which this inquisition is had [Code, Art. 23, Sec. 167] provides that the jury shall "value the damages which the owner or owners will sustain by the use and occupation of the property required," and the right which it is now proposed to acquire is the right to take, use and occupy the parcel of ground in question for the construction and maintenance in perpetuity of a railroad tunnel, through which will pass, it is said, some two hundred trains a day; one wall of which will come under the corner of the sidewalk and the top of which will come within from four to six feet of the surface of the ground. For the condemnation of this right the jury has valued the damages which the owner will sustain at the nominal sum of five dollars, and he has excepted to the ratification of the inquisition on the ground that the jury misapprehended the rules of law which should have governed them in estimating the damages, and that the damages are insufficient. In my judgment the exceptions are sustained by the evidence, and the inquisition must be set aside.

This is not the taking of an isolated parcel of ground. The parcel which it is proposed to take is under the surface of the street, but, subject to the public easement for the purposes of a street, it is just as much a part of the corner lot in question as is that portion on which the building stands. It is all one lot, although part of it is subject to a right of way in the public. The part in the bed of the street is held as part of the same freehold and not as a mere appurtenance to that portion of the lot which abuts on the street. Thomas vs. Ford, 63 Md. 346; Jackson vs. Hathaway, 15 John 447;

Chicago vs. Rumsey, 87 Ill. 348; Elliott on Streets 519; Railroad vs. Brown, 23 Fla. 104.

Where part of a lot is to be taken under such a statute as this the damages to be considered embrace two elements. 1st. The value of the part actually taken, which includes any damage that will be done to the rest of the lot by the separation; 2d, the injury that will result to the rest of the lot by the use which is to be made of the part taken. The general rule for ascertaining the total damages is to inquire what is the present fair market value of the whole lot; and, then, what will it be after the condemnation of the part taken; the difference is the amount to which the owner will be entitled. Archer's case, 9 Gill & J. 528; 2 Wood R. R. Sec. 259. Under this rule, as applied to this case, the inquiry should be, what is the present fair market value of this corner property subject to the public easement over part of it; and, then, what will be its fair market value after the taking of this parcel, as depreciated by the act of taking and by the right to appropriate it to all the purposes of a railroad tunnel; the difference will represent the damages.

The jury, I think, has erred in respect to each of the elements of damage referred to. They have treated the owner's title to the bed of the street as of only nominal value, and have evidently passed no judgment on the question of whether the rest of the property will be injured or not by the uses to which the parcel taken will be put; having acted probably under the impression that if any injury should hereafter occur from the construction of the tunnel or the operation through it of the railroad, the owner would have a right of action for such injury.

In the application of the general rule we are met by somewhat novel conditions, which have occasioned controversy between the parties and which ought to be more fully referred to for the guidance of another jury. The matters in controversy are most conveniently shown by stating the contention of the company. It is, that this parcel is of only nominal value, and that nothing can be awarded in this proceeding but its value; that if injury should result from the proposed

use and occupation of this parcel, the owner will have a right of action for the same, under Section 169 of Article 23, when it occurs, and the possibility of such injury is not to be considered in this proceeding; that if it is to be, it must be considered with reference only (1) to such injuries as may result from the use to be made of this parcel, and (2) must be confined to the corner property.

*First—The adjacent property.* Henry E. Baltzell is also the owner of the leasehold interest in several improved lots adjoining the corner property to the westward, and claims that by reason of their contiguity he is entitled also in these proceedings to all damages that may be caused to these adjoining houses and lots by the taking and use of the parcel in question; that because they are contiguous and there is one owner, the whole of them are to be treated as one property. This is not correct. These adjoining lots are separated in fact both by deed and improvements; they are improved by dwelling houses, and each of them is intended for separate occupancy. The parcel to be taken is a part of the corner lot, and this lot was acquired at a different time, under a different title, is held in a different interest, and, more especially, is separately improved and is not, and is not intended to be, used in common with any of the adjoining property. Under these circumstances the corner lot is a separate and distinct property, and, under these proceedings, is the only one in respect to which damages are to be awarded. Lewis, Sec. 475; Wood R. R., Sec. 262; Potts vs. Railroad, 119 Pa. 278. The property, in respect of which damages are to be allowed in this case, is that property, of which a part is taken, and the general terms of the statute should be so construed. St. Louis R. R. vs. Brown, 58 Ill. 61; Bangor vs. McComb, 60 Me. 290.

If any injury should be done to any of this adjoining property by the construction of the tunnel, or the location of the road, the owner will have his remedy in an action for damages.

Second. *The Title and Value of the Parcel Taken.*—As I have stated, the jury erred in putting upon this a merely nominal value because it lies under the bed of the street. The owner of such a parcel of ground has more than

a mere naked legal title to the fee; though the damages for taking it may not be the same, his title is the same as is that to the soil under his house. It might have no value in the market as a separate piece of ground, but apart from the question of damages that may be caused by its use, it has a substantial value to the owner, and an important relation to the improved portion of the lot. The jury seems to have overlooked this relation. If this parcel could be taken for nothing, one who owned to the centre would be no better off than a mere abutter. But, as held by the Court of Appeals of New York, the ownership to the centre vests in the owner a degree of control over the use to which the street may be put, and the right to defend against any use of the street that might be granted by legislative or municipal authority, which would be inconsistent with the uses to which alone his property is subjected by the public easement, unless compensation is made. So that apart from the matter of damages to the rest of the property because of the uses to which this parcel is to be put, it has a distinct and substantial value, and that value is the sum which would represent the depreciation in value of the rest of the lot which would be caused by its being deprived of the part taken. Buffalo vs. Pratt, 131 N. Y. 293. Mills, sec. 166. The value of ownership to the centre has been shown by several recent cases in this State in the recognition of the right it affords of protection against new servitudes, unless compensation be first paid. O'Brien vs. Belt R. R., 74 Md. 363; Chesapeake Telephone Co. vs. Mackenzie, 74 Md. 36-47; American Telephone Co. vs. Pearce, 71 Md. 535. And its value is plainly shown in this very case by the right which it gives the owner to protect himself against such close proximity of this tunnel, unless the damages which he will sustain be first paid.

Third. *Subsidence of soil and vibration.* It is claimed by the owner that in the excavation and blasting for the construction of the tunnel, and in the vibration that will be caused by the passing of trains, there will be danger of the subsidence of the soil, of the undermining of his house, and of the cracking of its walls; that by reason of such danger the value of his prop-

erty will be depreciated, and that the jury must inquire into these matters. On the other hand it is claimed by the company that whether such injuries will happen or not, cannot now be determined, and the owner must wait; that if any injury should result from the causes referred to he will not be precluded, but will have his remedy in an action for damages, and these matters are therefore not to be considered on this inquisition. In my opinion, it is the duty of the jury to make inquiry into these alleged causes of damage. Whatever damages the owner of this property will suffer from any of the causes referred to, by reason of the construction with proper care of the tunnel through the parcel in question, or by the future passing of trains, must be provided for now. If he were a mere abutter, without any title in the bed of the street which it is necessary to condemn, he might have to await actual results; but as condemnation of part of his lot is necessary, the jury must consider and allow in this proceeding all damages which they believe will result to the rest of the property by the proposed use; and subjecting it to the risk of injury from any of the sources referred to, if they believe it will be so subjected, would be a damage.

The jury must look to the future, as well as to immediate damages. By the terms of the statute, by the language of the company's application and of the warrant, by the oath of the jurors, and by the form of the inquisition, the jury is to value now all damages which the owner will sustain by the taking of the parcel in question *and by its use and occupation as set forth.* When these proceedings are completed and the damages paid, the company will have acquired and paid for the right to construct its tunnel and run its trains through the parcel of ground in question as fully as if such right had been conveyed by deed; and should any injury result in the future, it cannot again be liable for uses, risks or dangers which have been considered, estimated and paid for. All these matters must be now considered, and as to them the inquisition when ratified will be final. Grove vs. Canal Co., 11 G. & J. 398; Railroad vs. Compton, 2 Gill 20; Magruder vs. Railroad, 34 Md. 79; Phipps vs. Railroad, 66 Md. 319;

Croft vs. Railroad, 3 Best & Smith 436; Van Schoick vs. Canal Co., 20 N. J. L. 249; Henderson vs. Railroad, 78 N. Y. 423; 2 Wood R. R., Sec. 258 and Sec. 260.

If the future should show that the damages were excessive the company will not be able to recover back the excess; if they should prove to have been inadequate, the owner will have no right to further recovery.

The inquisition being a final ascertainment of all damages that will be sustained, these alleged causes of damage must be considered, notwithstanding the fact that it cannot now be known whether injuries from them will actually happen or not. They may or may not happen, but if the proposed use will subject this property to the risk of their happening, such risk would certainly depreciate its market value and thus be a damage. The jury is not called on to find positively whether they will, or will not occur, but to find whether there will be a risk or reasonable apprehension of their occurrence. This question of risk or danger the jury must inquire into and determine. In Grove's case the terms of the statute (Act 1823, Ch. 140) were substantially the same as are those of Section 167; the remaining land was subsequently flooded, and the owner sued for damages; but the Court held that the risk of overflow was an element of damage which it was the duty of the jury to have considered and allowed for, and the inquisition having been ratified, it was to be presumed that the owner had received an adequate indemnity against this risk. The Court says that it was the duty of the jury to take into consideration all damages that would be sustained, whether "immediate, remote or contingent." The rule that risks are damage and must be estimated has been applied also in the case of tunnels, see B. & S. 436, and 1 Exch. 733, supra; to the risk of injury from blasting, 2 Wood, Sec. 260; from fire, Setzler vs. Railroad, 112 Pa. 65; from subsidence, Jefferson Gas Co. vs. Davis, 147 Pa. 130; and it is laid down in Wood, supra, as a general rule applicable to all injuries likely to result.

Section 169 of Article 23, in securing a right of action for injuries done to private property lying upon or near a public street, by the location of a railroad on such street, does not conflict with, nor was it intended to supersede Section 167, which provides that on condemnation proceedings all damages which the owner will sustain must then be ascertained. It was not intended to diminish the rights of owners under Section 167, nor to disturb the long settled practice on inquisition, or its legal effect.

Those whose property is taken have a right to have the damages they will sustain by the taking and the use, estimated and paid before the work goes on; others must await results, and, if injured, rely upon a suit for damages; but the right of action under Section 169 could not be availed of by such persons as had already had a portion of their property taken on condemnation proceedings, under which such injuries, or the risk of their happening, had been allowed for or duly considered.

The duty of a jury under the circumstances is a difficult one to perform with perfect fairness and justice to each party, because they must estimate contingencies; but the company requires this ground for its road, it has the right to acquire it now, it and the owner cannot agree, and a jury therefore must value now the damages according to the best judgment they can form. They should carefully inquire into the nature of the soil, the character of the building on the lot, the plans for the construction of the tunnel, the effect of passing trains, and the whole situation; then from the evidence and their own observations they must, as best as they can, determine whether or not there will be any damage, or risk, or reasonable apprehension of injury, in the respects referred to, from locating the tunnel on this parcel of ground; and if they believe there will be, then they must estimate the extent to which the property will be depreciated by such damage, risk or apprehension.

Fourth. The owner also claims that his property will be damaged by smoke and cinders from the portal of the tunnel. This portal, however, is located on the private property of the company without any reference to the property in question, and any injury from it would be altogether separate and distinct from damage caused by the taking and use of the ground to be

condemned. I therefore do not think he would be entitled to damages in these proceedings for any injury that might be caused by smoke and cinders from the portal; nor do I think he would be entitled to damages for any temporary annoyance or inconvenience that might result from the proposed breaking of the surface of the public street while the tunnel is being constructed. The company does not get the authority to break or obstruct the surface of the street from the exceptant, or under these proceedings.

I have thus referred to all the matters which have been the subject of controversy before me, in order to make as clear as I can to another jury the character and scope of their inquiry as it relates to (1) the property to be considered; (2) the proper way in which to regard the parcel to be taken; (3) the causes or possibilities of damage which it is proper for them to consider in determining to what extent the corner property will be depreciated by the taking and use of this parcel; and (4) what possible injuries they are not to consider in this connection. Excluding from their inquiry all the adjoining property, and confining it to the corner property with its qualified title to the centre of the street, they will come back, after due consideration in detail of all alleged causes of damage, to the general rule as stated. That is, as applied to this case, to inquire what is the present fair market value of this corner property; then, what will it be as depreciated by the loss of this parcel and its use for the construction and maintenance of a railroad tunnel; the difference will be the proper amount of damages. As indicated, this property may be injured by other causes connected with the construction of this railroad, as, for instance, by the location of the portal of the tunnel, or by the breaking of the surface of the street. Any possible depreciation from such causes is not to be considered in this proceeding; injury from them would not be caused by the taking and use of this parcel. The depreciation which is to be estimated is such as will be caused by the loss of this parcel, and by the damage which the rest of the property will sustain by any certain injury, or by the risk or reasonable apprehension of injury, resulting from the proposed use and occupation of the parcel taken.

Alice H. Baltzell, the wife of Henry E. Baltzell, because of her potential right of dower, and Annie M. Murray, mortgagee, are made parties to this proceeding, but raise no question as to the distribution of any damages that may be awarded. An award of nominal damages will be sufficient as to them. For the reasons stated I will sign an order setting aside this inquisition and directing another.