The Chesapeake and Ohio Canal Company *vs.* William Grove.—*June*, 1841.

In estimating the value of land condemned for the use of the Chesapeake and Ohio Canal Company, the jury of inquest were also authorised to take into consideration all damages which the owner of the land would sustain by an appropriation of it to such use, whether immediate, remote or contingent.

When the inquisition is ratified and confirmed, the presumption is, that the jury awarded damages to the extent of their authority, and to all persons who might be affected by their finding.

Under an inquisition to condemn lands in fee, for the use of the Chesapeake and Ohio Canal Company, in the construction of their works, the jury, in the assessment of damages, were authorised to take into consideration the increased height of the water of the Potomac River, in the pool of a dam

which it was designed to build at the point of condemnation, in the times of freshets, and the liability thereby occasioned, of the land along and contiguous to said condemnation, to be overflowed and injured by the water of the said pool in such times, and to award to their owner, compensation in damages for any abatement in value of said lands arising from that cause.

APPEAL from *Washington* County Court.

This was an action of trespass upon the case, brought on the 12th January 1839, by the appellee against the appellant, to recover damages for overflowing the plaintiff's land, by means of a dam wrongfully erected by the defendants across the *River Potomac*, which backed the water out of its accustomed channels upon the plaintiff's lands, to his injury. The defendants pleaded not guilty, and the license of the plaintiff to build their dam, upon which issue were joined.

FIRST EXCEPTION.—The plaintiff to support the issue on his part joined, offered in evidence to the jury, by *Samuel Lynch, Jr.*, and *James Dixon*, competent witnesses, that in the spring of 1836, and again in 1838, freshets occurred in the *Potomac River*, which overflowed the land of the plaintiff; the first of which freshets destroyed about ten acres of corn, then growing on bottom land of the plaintiff, and contiguous to the said river, and washed away a large portion of the soil, doing thereby considerable injury to the land; that the other freshet overflowed a crop of oats, and did some injury to the same. The plaintiff proved further by the said witnesses, that the said overflowing of his land, and consequent injury thereto, was occasioned by the erection of a dam by the defendants across the bed of the said river, a short distance below the lands of the plaintiff; but on the land of an adjoining proprietor, by which said dam, the water in the part thereof opposite the said bottom land of the plaintiff, had been increased in depth above its natural level, twenty-three feet six inches. That before the erection of the said dam, the said bottom now owned by the said plaintiff, was very rarely overflowed by the water of the said river, but since the said erection, it is subject to be inundated at all times, when there is a freshet of more than usual depth in the river. The plaintiff further proved by

*Jacob Dellinger*, a competent witness, that bottom land such as that in question, considered in connexion with the up land of a farm, is worth one hundred dollars per acre, which is its full value.

The defendants then to support the issue on their part joined, offered in evidence to the jury the following proceedings and inquisition, viz:

*State of Maryland, Washington County, to wit:*—An inquisition taken at *Washington* county aforesaid, on the thirty-first day of October 1833, before *William H. Fitzhugh, Esq.,* sheriff of the county aforesaid, on the oath of *Jacob Hollings-worth,* &c., who having been summoned by said sheriff, and having met on the land hereinafter described, of *Samuel Lynch,* valued for the use of the *Chesapeake and Ohio Canal Company,* in pursuance of a warrant for that purpose, issued to the said sheriff by *Stewart Herbert,* a justice of the peace of the *State of Maryland,* in and for the said county, on the 17th day of October, in the year aforesaid, and every juryman aforesaid having first taken an oath administered by the sheriff, that he would faithfully, justly, and impartially, value the said land, and all damages which the said *Samuel Lynch,* the owner thereof, would sustain by cutting the said canal through the same, according to the best of his skill and judgment, and that in such valuation, he should not spare any person for favor or affection, nor any person grieve for malice, hatred, or ill will, which said lands so valued and described, as hereinafter set forth, being required by the said *Canal Company* for its use, as of an absolute estate in perpetuity, in *Washington* county aforesaid, and being part of a tract of land bounded as follows, that is to say. Beginning at a stone marked 1, which bears from the end of upper left wing of guard lock No. 4, of the Chesapeake and Ohio Canal, and running thence north thirty-four and one-half degrees, east eight perches and three-tenths, to a stone marked 2, thence, &c. After various courses to a red oak tree, on the division line between the land hereby condemned, and the land of *Thomas Buchanan,* thence north forty-five and one-half degrees, west four perches, to the *Potomac*

*River*, thence down said stream with the meanders thereof, &c., and thence, &c., to the place of beginning, containing eight acres, two rods and thirty-five perches. And the jury aforesaid, upon their oaths aforesaid, do say, that they value the said land and all damages which the said *Samuel Lynch* will sustain, by cutting the canal through the same, and by the occupation thereof in perpetuity, at the sum of fifteen hundred dollars, which is accordingly hereby awarded to the said *Samuel Lynch*, his executors, administrators and assigns. In testimony whereof, the said sheriff and jurors have hereunto set their hands and affixed their seals, the day and year first hereinbefore written.

WILLIAM H. FITZHUGH, (Seal.)

*Sheriff of Washington County.*

JACOB HOLLINGSWORTH, (Seal.) &c.

*In Washington County Court, March Term* 1834—Ordered and adjudged by the court, this twelfth day of April 1834, that the foregoing inquisition be, and the same is hereby affirmed, no good cause having been shewn against the same, and that the same be recorded as the law directs.

Test,                    O. H. WILLIAMS, *Clerk.*

It was admitted, that the land so condemned, and the farm of which it formed a part, belonged at the time of said condemnation to *Samuel Lynch*, Sen., now deceased, by whose executor it was sold to the plaintiff early in year 1836.

The defendants further offered in evidence by *Charles B. Fisk*, a competent witness, that the land so condemned lies next the river, along the whole extent of the said bottom land of the plaintiff, and extends from the water line of the said river at low water mark, up the slope of the bank, and takes in a strip of the bottom or level land above the bank, about one perch in breadth along the whole length of the said condemnation. It was further proved by the said witness, that of the eight acres two rods and thirty-five perches so condemned, about five acres lay between the top of the bank and the low water mark of the said river, and was condemned by the Canal Company, because the same was to be covered by the

part of dam No. 4, as aforesaid. It was further proved by the said witness, that the strip of level land above the bank, contained in all something less than three acres, and was condemned by the said company as the site of a towing path; which was constructed thereon about the year 1837, since the injury first complained of by the plaintiff. It was further proved by said witness, that the quantity of arable land within the lines of said condemnation, was about three acres, the residue of the same being waste land unfit for cultivation, but having timber on it useful for the protection of the bank of the river.

The defendants further offered in evidence by *John G. Stone*, a competent witness, that at the time of the said condemnation, the said dam No. 4, though not erected, was nevertheless planned and projected, the site thereof had been condemned. The defendant further proved by one of the jurors who tried said inquisition, (*Benjamin Leight*,) that the height to which the water at the ordinary height would be raised, along the lands now in question, was shewn by the engineers of the company to the jurors who tried said inquisition; but he did not take much notice of it, except so far as it affected the spring. The defendants further proved by the said *Benjamin Leight*, that he was one of the jury who found said inquisition, and that in estimating their damages, they valued the land and certain timber that was on it, and also the injury arising from the destruction of a spring, and the only spring on the land, but he has no knowledge or recollection of their having made any allowance for, or having taken into their consideration, the probable or possible damages that might arise to the owner thereof, from the floodings of lands not within the lines of the land condemned for the use of said company, by the backing of the water of the *Potomac River*, by the erection or height of said dam. The defendants also proved by *R. M. Tidball, Esq.*, that he was the counsel of the said *Lynch*, in the trial of said case of inquisition; that as the counsel of said *Lynch*, he claimed damages for the destruction of a spring, and the only spring on said land, by the making of said canal, but that he has no recollection either that he did, or that he did not, offer any proof in relation thereto, or claim damages before said jury,

on account of any supposed flooding of said land by the erection of said dam by the said defendants, that might thereafter take place by high water or otherwise. But he distinctly recollects, that he urged before the jury a claim for damages on account of the destruction of the spring and certain timber.

The defendants thereupon prayed the court to instruct the jury, that in the trial of said inquisition, it was competent and proper for the said jury of inquest, to take into consideration the increased height of the water in the pool of the said dam, in times of freshets, and the liability thereby occasioned of the lands along and contiguous to the said condemnation, to be overflowed and injured by the water of the said pool in times of freshets; and to award to the then owner a compensation in damages for any abatement in the value of said lands arising from that cause.

That the right and power of the said jury of inquest to take into consideration the increased height of the said water in times of freshets, renders their finding conclusive upon the parties as to all consequences of the said rise of the water, so as to preclude either party from again enquiring into or making the said rising of the water or its consequences, a subject of future litigation, and therefore the plaintiff is not entitled to recover. Which opinion and direction to the jury the court (J. Buchanan, C. J., and T. Buchanan, A. J.,) refused to give. The defendants excepted.

Second Exception.—The defendants upon the facts set forth in the first bill of exceptions, which are to be considered as forming a part of this second bill of exceptions, further proved by the evidence of *Charles B. Fisk*, that at the time of the trial of the said inquisition, it ought to have been known to the engineers, and he has no doubt that they did know that the water of said dam or pool would in ordinary freshets overflow the said bottom lands.

The defendants then prayed the court to instruct the jury, that if they should be of opinion from the said evidence in the cause, that the liability of the said lands to be overflown by the freshets of the said river, and injury to the said lands in consequence thereof, were both probable if not necessary re-

sults of the flooding back of the said water, that such evidence affords *prima facie* proof, that the said jury of inquest did take the said subject of damages into consideration, and allow the plaintiff a compensation therefor; and that unless some other evidence than that heretofore stated is offered to the jury by the plaintiff, the said plaintiff is not entitled to recover. Which opinion the court refused to give. The defendants excepted.

The verdict and judgment being for the plaintiff below, the Canal Company prosecuted this appeal.

This cause was argued before STEPHEN, ARCHER, DORSEY, and SPENCE, J.

By PRICE for the appellants, and
By F. A. SCHLEY for the appellee.

STEPHEN, J., delivered the opinion of the court.

We think that there was error in all the opinions and instructions of the court below, given to the jury in this case. It was unquestionably the right and province of the jury, in estimating the value of the land condemned for the use of the Canal Company, to take into their consideration also, all damages which the owner of the land would sustain by an appropriation of it to such use, whether the same were immediate, remote or contingent, and the legal presumption is, that such duty has been faithfully performed by them, conformably to the oath which they took at the time of the valuation; no objection having been made upon the return of the inquisition, and the same having been recorded. To support this action therefore, would not only be a violation of the policy of the law, which was to prevent litigation, but would be to award to the plaintiff a compensation in damages for an injury for which, in legal construction, he has already received an adequate indemnity. This is a measure of remuneration, which cannot be sustained upon the rules of fair dealing, and which the principles of law and justice will not tolerate. There was therefore error in the judgment of the court below, sustaining the plaintiff's action, and the same must be reversed.

JUDGMENT REVERSED.

SPENCE, J. dissented.