Baltimore and Potomac Railroad Company *vs.* Magruder.

(Decided 15th February, 1871.)

---

## The Baltimore and Potomac Railroad Company *vs.* Fielder Magruder.

*Right of a Railroad Company to divert a Stream of water flowing across the Line of its road—How the Right to divert such stream may be acquired—Admissibility of Evidence de hors the Inquisition to show that the Attention of the Jury of Inquest was directed to the proposed Diversion—Invalidity of a Claim for damages by the Owner of the Land through which the stream flows, for Injury occasioned by its diversion.*

Under a charter conferring on a Railroad company the power to acquire by condemnation, land for the construction of its road, the company have the right to divert, if they see fit to do so, a stream of water flowing across the line of their road.

The right thus to divert a stream of water, does not depend upon an express grant to be made and specified in the inquisition itself, but may be acquired by condemnation of the land, duly confirmed, and payment or tender of the damages awarded; and proof *de hors* the inquisition is admissible to show that at the time of taking and before they signed the same, the attention of the jury of inquest was directed to the intended diversion.

Baltimore and Potomac Railroad Company *vs.* Magruder.

And where the attention of the jury is directed to such diversion, and the same is within the lines of the land condemned for the construction of the road, the owner of the land through which the road passes, has no remedy, either at law or in equity, for any injury that may result therefrom.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The bill in this case, filed on the 19th of March, 1869, by the appellee, alleged that he was the owner of a large tract of land in Prince George's County; that the appellant had located the route of its road through said land, and was engaged in constructing it; that in constructing the road, the appellant claimed to have the right to alter and change the bed and course of the "Beaver Dam," a stream which had run, from time immemorial, through the complainant's land, and was the only branch on which he depended for watering his stock, and which supplied an ancient mill-race, then owned by him, and which he was about to repair in order to carry on his mill.

The bill also alleged that the appellant had commenced to dig and cut a canal for the purpose of diverting the water from the bed of the said stream; and was about to cut through and entirely fill up the bed of the said mill-race which crossed the railroad at a certain point, without providing a bridge or culvert for the escape of the water, &c., and would thereby destroy the mill-race and mill.

The bill further alleged that the diversion of the stream and the filling up of the mill-race would leave the lands of the complainant without the necessary supply of water, would destroy the value of his mill and mill-race, and that the damage would be irreparable. The bill denied the right of the Railroad company to divert the course of the Beaver Dam stream, or to fill up any portion of the mill-race, and charged that it was the duty of the company to build bridges, culverts, &c., for the uninterrupted passage of all streams which crossed the line of their road.

The bill concluded with a prayer for an injunction commanding the company, &c., to cease from diverting or altering the water of the "Beaver Dam" branch from its present bed or course through the complainant's lands, and also to desist from any attempt to shut up or destroy the mill-race running through his land at the point where the said mill-race crossed or intersected the line of the railroad.

Upon this bill the Court granted an injunction.

On the 28th day of April, 1869, the Baltimore and Potomac Railroad Company filed their answer, admitting that they were engaged in constructing their road through the land of the complainant, and averred that being unable to agree with him for the purchase, or use, or occupation of the land wanted for the construction of their road and the works of the same, they caused a warrant to be issued; that under this warrant the jury valued and condemned certain real estate and assessed the damages which the complainant would sustain by the use and occupation aforesaid, at $5,225; that the inquisition was confirmed, and the damages had been paid to the complainant.

The defendants further admitted that in the construction and building of the road, they had changed the "Beaver Dam" stream or straightened the same, but they averred that in making the change they had not carried the stream outside of the limits of the land condemned, and that the proposed change was necessary for the proper construction of the road, and that under their charter and the said inquisition they had the right to make such change.

The answer denied that the proposed change would deprive the complainant of water for the use of his stock; and further that there was a mill-seat and mill-race to which the complainant could set up any claim, and that in point of fact they were depriving the complainant of the use of a race or mill-seat by so changing the course of the stream.

The defendant further charged that the sum of $5,200 awarded as damages, covered all damages which the com-

plainant would sustain by the construction of the road and works thereof; that by the reception of the damages he was estopped from claiming that the straightening of the stream in the proper and necessary construction of the road was an irreparable damage; and further that he had been compensated for whatever damage might be sustained by the construction of the road in a proper and necessary manner.

A motion was made after filing the answer to dissolve the injunction. And upon the petition of the complainant, an order was passed to take testimony to be used at the hearing of the motion.

A large amount of testimony was taken.

The case was submitted for final hearing upon the bill, answer, and proof taken under the motion to dissolve the injunction.

On the 2d of August, 1869, the Court (MAGRUDER, J.,) passed an order overruling the motion to dissolve the injunction, and making the injunction perpetual.

From this order the present appeal was taken.

The cause was argued before BARTOL, C. J., GRASON, MILLER and ROBINSON, J.

*Daniel Clarke,* for the appellant.

The Baltimore and Potomac Railroad Company has the right to divert a stream of water, either by express agreement with the owner of the land or by condemnation. *Act of* 1853, *ch.* 194, *secs.* 12, 13; *Angell on Water Courses, secs.* 457, 458, 469, 470; 1 *Greenl. Cruise Dig.,* 37; *Williams' Real Property,* 12; *Den vs. Wright, et al.,* 1 *Peters' C. C. R.,* 64; *Newsom vs. Pryor's Lessee,* 7 *Wheaton,* 7; *Canal Commissioners vs. The People,* 5 *Wend.,* 423.

The right to divert a stream of water by condemnation, may be acquired either by the inquisition of a jury duly ratified, which describes the metes and bounds of the lands condemned, and indicates on a map or profile accompanying

and made part of the same, the course of the stream when so diverted; or secondly, by an inquisition of a jury duly ratified which describes the metes and bounds of the lands taken, followed by proof that at the time the inquisition was taken, the proposed diversion was pointed out and called to the attention of the jury, and that the diversion of the stream is *confined within the limits of the land condemned. Beaver vs. Western Maryland Railroad Co., noted in 32 Md., among the unreported cases.*

If a stream runs within the limits of the land condemned for the use and occupation of a railroad, and the stream is diverted after it enters the land from its old channel, and is carried within the lines of the land condemned until it flows again into its old channel, such diversion is not a question of *grant*, but of *damage*. And if at the time of condemnation the attention of the jury was called to such diversion, after the confirmation and the payment or tender of the amount of damages awarded, the company has the right to make such diversion within the limits of the right of way so condemned. *Beaver vs. Western Maryland R. R. Co.*

Parol proof is admissible to show that the attention of the jury was called to the diversion of the stream at the time when the condemnation was made. *Beaver vs. Western Maryland R. R. Co.*

If the inquisition was ratified and confirmed, and the attention of the jury was called to the fact of the proposed diversion of the Beaver Dam branch, at the time of the taking of the inquisition, and the change or diversion as proposed corresponds *exactly with the diversion as pionted out to the jury, and is confined within the limits of the land condemned,* and the complainant has received the amount of damages so awarded him from the company, all questions having relation to the damage done by the location and construction of the road, and the diversion of the stream within the limits of the land condemned, are terminated and concluded by such inquest, and the complainant is not entitled to an injunction to re-

strain the defendant from doing that for which he has been compensated in damages. *Baltimore and Susquehanna R. R. Co. vs. Compton,* 2 *Gill,* 20; *Chesapeake and Ohio Canal Co. vs. Grove,* 11 *Gill & J.,* 398; *Beaver vs. Western Maryland R. R. Co.*

If the diversion of the stream was pointed out and called to the attention of the jury, the legal presumption is that the jury considered and allowed for all damages which the complainant would sustain either from inconvenience, &c. in watering his stock, or from injury done to his mill-seat and mill-race. *Chesapeake and Ohio Canal Co. vs. Grove,* 11 *Gill & John.,* 398; *Beaver vs. Western Maryland Railroad.*

The evidence shows:

*First.* That the land of the complainant was condemned and the inquisition duly ratified and confirmed, and that he has received the amount of the damages awarded.

*Secondly.* That the attention of the jury was called to the fact of the proposed diversion of the stream, and that such proposed diversion corresponds exactly with the proposed change of stream as pointed out to the jury.

*Thirdly.* That the proposed change or diversion of the stream is confined wholly to a change in the course of the stream within the limits of the lines of the land condemned; and that the company does not carry the bed of the stream, when so changed, *on the land of the complainant outside of the condemned land.*

*Samuel H. Berry,* for the appellee.

The appellee is as much entitled to the water of the "Beaver Dam" stream, as to the land through which it runs, or as he would be to wood, stone, or any other material that might be thereon, and the appellant had no right to divert the stream outside of the land condemned. *Act of* 1853, *ch.* 194; *Greenleaf Cruise Dig.,* 37; *William's Real Property,* 12; *Den vs. Wright, et al.,* 1 *Peters' C. C. Rep.,* 64; *Newsom vs. Pryor's Lessee,* 7 *Wheat.,* 7; *Canal Commissioners vs. The People,* 5 *Wendell,* 423; *Angell on Water Courses,* 5.

By reference to the warrant, it will be seen that the appellant made application to acquire the right to enter upon and possess, for the construction and repair of its road, and of works connected therewith, strips of land owned by the appellee, four rods in width, one-half thereof on each side of the centre line of said railroad; that the same has been located by the engineers of the company, and extends in length through and across the lands of the appellee, a distance of from three-quarters to a mile; the jury were required to value the same, and assess the damages to be sustained by the appellee by the use and occupation of said land by the company for its road. The jury condemned *that extent of land alone*, and awarded the sum of $5,225 for the damage sustained by the appellee, by the use and occupation *of said strip of land for construction.* This is the *limit* of the *land condemned*, and for *which alone damages were awarded.*

Whilst the appellant may have the right to change the course of a stream within the limits of a grant or land condemned, it must be so exercised as not to be detrimental to the rights of proprietors of the land, above or below the point at which the proposed change is made.

Courts of Chancery are the only tribunals vested with jurisdiction to restrain parties from altering, changing, or obstructing the course of waters flowing through the lands of others, as such changes or obstructions are an injury and damage to the freehold, which could not be adequately redressed in a Court of law. *White vs. Flannigan*, 1 *Md.*, 539; *Lamborn vs. Covington Co.*, 2 *Md. Ch. Dec.*, 409; *Herr vs. Bierbower*, 3 *Md. Ch. Dec.*, 456; *Cockey vs. Carroll*, 4 *Md. Ch. Dec.*, 344; *Carlisle vs. Stevenson*, 3 *Md. Ch. Dec.*, 499.

There is no proof that the damages sustained by the appellee, in thus changing the course of said stream, were considered by the jury in awarding damages for the right of way through the lands of the appellee; nor is there any sufficient proof that the jury which made the condemnation as a whole, knew at the time of making up their verdict, that the pro-

posed change in said stream was contemplated or intended to be made.

The receipt by the appellee of the damages awarded by the jury, is no estoppel to,the prosecution of this suit on his part, as the damages awarded by the jury were estimated by them solely for the sixty-six feet of land condemned by them for the construction of the road.

Even should the proposed change of said stream benefit the appellee as claimed by the appellant, (but which is denied by the appellee,) it is not a matter for the consideration of this Court; the only question for this .Court to consider is, *has the appellant the right under its grant in this case of sixty-six feet, to go beyond the limits of its grant to make such change,* and thereby divert the water from the freehold of the appellee?

MILLER, J., delivered the opinion of the Court.

Since the passage of the decree from which this appeal is taken, the case of *Beaver vs. The Western Maryland Railroad Company* has been decided by this Court. That was a case where Beaver brought an action of trespass *quare clausum fregit,* against the Railroad Company for entering upon his land, and by. the construction of their road, diverting a stream of water called the "Patapsco Falls" from its ancient course into a new channel, dug for that purpose, whereby the stream was cut off from a large part of his farm through which it used to flow, so that he could no longer water his stock and cattle therefrom, and use it for the purposes of his farm as he had been accustomed to do. The company relied upon the inquisition (which had been duly confirmed and the assessed damages paid) and the fact that the attention of the jury of inquest was directed to the intended diversion of the stream, and that the same was within the lines of the land condemned, as a bar to any recovery for damages resulting from such diversion. The inquisition there does not materially differ from that in the present case. Instead of describing

the land condemned precisely in the same mode as the one before us, it did so chiefly by reference to lines on a plat filed with, and made part of the inquisition, "which lines," as it states, "fully describe the piece or parcel of *land* required by the said Western Maryland Railroad Company" for the construction thereon of the *bed* of their road, but in both it is the described *land* that is condemned, and there is nothing on the face of either amounting to an *express grant* of the right to divert the stream. In that case, conflicting oral testimony of many witnesses on both sides was offered upon the question whether the attention of the jury of inquest was called to the intended diversion, as well as whether they actually took it into consideration in estimating the damages they awarded. At the instance of the defendant the Court below instructed the jury that if they should find from the evidence, that the *attention* of the jurors who found the inquisition *was called* to the intended diversion of the stream in the construction of the railroad, and should also find that the road was constructed, and the new channel for the diversion of the stream was dug, in and upon the land within the lines of the land condemned by the inquisition, then their verdict *must be for the defendant*, and in reference to this instruction this Court said : "We can discover no objection to this prayer, and the only objection that is made to it in the appellant's brief, is that it should have required the jury to find that the jury of inquest *estimated*, in the damages allowed by it, the injury to the appellant by reason of the intended diversion of the water in the Patapsco Falls. The prayer did require the jury to find that the *attention* of the jury of inquest was directed to that diversion, and the *legal presumption is that they estimated in their inquisition the damages to result from such diversion. Chesapeake and Ohio Canal Co. vs. Grove,* 11 *G. & J.,* 404."

That case decides *first,* that under a charter, similar in this respect to that of the appellant, conferring the power to acquire by condemnation land for the construction of its road, the company has the right to divert, if they see fit to do so, a

Baltimore and Potomac Railroad Company *vs.* Magruder.

stream of water flowing across the line of their road: *secondly*, that this right does not depend upon an express grant to be made and specified in the inquisition itself, but may be acquired by condemnation of the land duly confirmed, and payment or tender of the damages awarded, and proof *de hors* the inquisition that the attention of the jury of inquest was directed to the intended diversion at the time of taking, and before they signed the same: and *thirdly*, that if the attention of the jury was thus directed to such diversion, and the same was made within the lines of the land condemned for the construction of the road, the owner of the land through which the road passes has no remedy, either at law or in equity, for any injury that may result therefrom.

The inquisition in the present case was regularly confirmed, and the damages thereby awarded have been paid to the appellee. The proof in the record, which we have examined with care, establishes to our satisfaction the fact that the attention of the jury was directed to the proposed diversion of the stream called "Beaver Dam Branch," (the making of which the injunction restrains,) from its old channel through the lands of the complainant, at the time of taking and before they signed their inquisition, and also that such diversion is confined within the limits of the land condemned.

The decree appealed from must be reversed, the injunction dissolved and the bill of complaint dismissed.

*Decree reversed and*
*bill dismissed.*

(Decided 15th February, 1871.)