THE BALTIMORE BELT RAILROAD COMPANY *vs.* ELIZA LEE.

*Occupation of Land by Railroad company without Con-demnation—Trespass—Injunction — Nature of Title to Land to Entitle the Owner to Injunction to Restrain a Trespass.*

A railroad company has no right to take possession of land and use it, against the consent of the owner, without making compensation.

There is no mode of acquiring the right to this use and occupation of the land of another, against his will, except by condemnation under the authority given by statute.

A lot of ground was taken possession of by a railroad company, and used for purposes connected with a tunnel which it was constructing, and said company assumed to grant to the municipal corporation within whose limits the lot was located, a license to use said lot, or a portion of it, for purposes connected with the building of a bridge, and said municipal corporation entered upon said portion of the lot and proceeded to occupy and use it.   A bill was filed by the owner of the lot against said corporations alleging as above and praying for an injunction to prohibit the defendant from occupying the lot and from doing any work upon it.   According to both bill and answer the lot was

being used for the purpose of accomplishing the objects for which the railroad company was incorporated. HELD:

1st. That the acts charged in the bill cannot be regarded as amounting merely to a fugitive and temporary trespass.

2nd. That the natural use of the land in question, it being a city lot, would be for building or business purposes; at all events, for some purpose entirely different from that to which it was applied by the railroad company; and so far as the interests of the owner were concerned, the trespass went to the destruction of the property in the character in which it was enjoyed by him, and he was entitled to have the same enjoined.

On the 27th of May, 1885, C. and his wife conveyed in fee to the trustees of the estate of A. a tract of land in Baltimore County. Although the conveyance was in fee, it was really intended to be a security for a debt of $132,000, due by C. to said trustees. On the 17th and 24th days of November, 1885, C. and his wife conveyed in fee several lots of land then in Baltimore County, but afterwards included in the City of Baltimore, to B. It was intended that these lots should be additional security for C's debt to the trustees of the estate of A., and on the 28th of May, 1886, B. and wife conveyed these lots in fee to said trustees. On the 22nd of May, 1889, C. and wife conveyed the same lots to M. and the title so conveyed afterwards became vested in the B. and L. R. R. Co. On the 25th of June, 1891, the said lots were conveyed by said trustees to L. in consideration of the payment of $25,000, in part payment of the debt due by C. to said trustees. On the 30th of July, a release of the mortgage for $132,000, was recorded. The parties in this paper styled the deed in fee (of May 27th, 1885,) a mortgage, because it was really intended as a security for a debt of that amount. The release was dated and executed in September, 1885, but was not delivered until the whole amount due was paid, which was at the time it was recorded. The release made no mention of the land conveyed by C. and wife to B. and by B. and wife to the trustees. It referred only to the land conveyed by C. and wife to the trustees in May, 1885, and reconveyed to them the same land. On a bill filed by L. against the B. and L. R. R. Co. for an injunction to restrain it from committing a trespass upon the land conveyed to her, it was HELD:

1st. That at the time the trustees of the estate of A. made the conveyance to L. they held the legal title to the land, which

legal title they conveyed to her for $25,000, and she, having notice that the trustees held the property merely as a security for a debt, must hold it in the same plight and condition, affected by the same equities.

2nd. That nevertheless she held the title with all the incidents and advantages, until she should be paid the money for which it was security; and as the legal title of the trustees was consummated by the deeds from B. and wife in May, 1886, her deed had priority over all conveyances made by C. and wife subsequently to that date; she being invested with the same title which was held by the trustees.

3rd. That the deed from C. and wife to M. made in 1889, was the origin of the title under which the railroad company claimed to use and occupy the land; and, without questioning the right of M's assignee to call for a conveyance of the legal estate from L. on paying her the amount for which the lot was held by her as security, yet until they did so they could have no right to the possession of the land as against her.

4th. That any use and occupation of the lot against the will of L. was a trespass; and as the trespass complained of was of a kind for which an injunction would be granted, she was entitled to the protection of a Court of equity for such invasion of her rights.

APPEAL from the Circuit Court No. 2 of Baltimore City.

The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, FOWLER, MCSHERRY, and BRISCOE, J.

*Herbert R. Preston,* and *John K. Cowen,* (with whom were *W. Irvine Cross,* and *Hugh L. Bond, Jr.,* on the brief,) for the appellant.

*John Prentiss Poe, Attorney-General,* (with whom was *S. Johnson Poe,* on the brief) for the appellée.

BRYAN J., delivered the opinion of the Court.

Mrs. Eliza Lee filed a bill in equity, against the Baltimore Belt Railroad Company and the Mayor and City Council of Baltimore. The bill alleged that the complainant was the owner in fee of a lot of ground in the City of Baltimore, and that the Belt Railroad Company had taken possession of it, and was using it for purposes connected with the tunnel which it was constructing, and that it had assumed to grant to the Mayor and City Council a license to use the lot, or a portion of it, for purposes connected with the building of a bridge over Jones' Falls, and that the Mayor and City Council had entered upon a portion of the lot and were occupying and using it. The prayer was for an injunction to prohibit the defendants from occupying the lot, and from doing any work of any description upon it, and also for a mandatory injunction requiring them to remove from it all their personal property and effects. The Court ordered an injunction to restrain them from occupying the lot and from carrying on any work upon it. The railroad company answered the bill of complaint and denied the title of the complainant as alleged, and set up a title to the lot in the Baltimore and Lehigh Railroad Company; and further stated that it had agreed with the Mayor and City Council to provide approaches for a bridge over Jones' Falls, and that the occupation of the lot by the rail road company and the Mayor and City Council was by virtue of a license from the Baltimore and Lehigh Rail Road Company. The Mayor and City Council do not appear to have answered the bill of complaint. A motion to dissolve the injunction was made by the railroad company; and after testimony and hearing it was overruled. The railroad company has appealed.

If the complainant has the title which she claims, there does not seem to be any well grounded objection to

the injunction. The railroad company certainly could have no right to take possession of land and use it against the consent of the owner without making compensation. In any aspect of the case it would be an abuse of its corporate power. There is no mode of acquiring the right to this use and occupation of the land of another against his will, except by condemnation under the authority given by statute. The acts charged in the bill cannot be regarded as amounting merely to a fugitive and temporary trespass. According to both bill and answer the lot is used for the purpose of accomplishing the object for which the railroad company was incorporated. But even a trespass will be enjoined under some circumstances. In *White vs. Flannigain*, 1 *Md.*, 525, it was decided that where a party held a right of way over a street, equity would grant an injunction to prevent the obstruction of it. The reason given was that obstruction of it destroyed it as a street, and the party was entitled to the enjoyment of it as a street. The principle was recognized on a review of the authorities that where the mischief reached to the very substance and value of the estate, and went to the destruction of it in the character, in which it was enjoyed, equity would give relief against the trespass by injunction. This case has been frequently approved, and its principle often applied in other cases where the facts were of a different character. In *Gilbert vs. Arnold*, 30 *Md.*, 29, the controversy involved the right to use a building which had been erected and set apart for religious worship. A bill in equity was filed in which it was alleged that Messrs. Arnold and Hobbs were "the ministers and preachers duly appointed to have pastoral charge of said 'meeting-house;' and that shortly after they had entered upon the discharge of their duties, the defendants and others in concert with them, *not members* of said *religious society*, commenced an *unauthorized* and *unjustifiable* use and occu-

pancy of said meeting-house whereby they have *hindered,
obstructed, interrupted,* and *interferred* with said ministers
in the due progress and prosecution of their duties."
This Court held that the complainants were entitled to
an injunction and among other reasons for their opinion,
they relied on the fact that the trespass went to the
destruction of the property in the character in which it
had been held and enjoyed, citing *White vs. Flannigain.*
In *Mayor, &c. of Frederick vs. Groshen,* 30 *Md.*, 436,
the complainant alleged that the Mayor, Aldermen and
Common Council of Frederick without lawful authority
had entered upon and taken possession of certain land
belonging to him, and were engaged in excavating,
digging up, and removing the soil, and that his business
as a coal dealer, having a coal yard on the premises,
would be seriously impaired, if not destroyed by such
acts.    This Court held that the defendant's acts were
not authorized by its charter of incorporation, and that
the complainant's injury ought to be remedied by injunc-
tion, and cited from *White vs. Flannigain,* that a trespass
will be enjoined where it is of such a character as to
work destruction of the property as it had been held and
enjoyed.    The Court also say: "But there is another
ground upon which the appellee is entitled to the injunc-
tion, and that is, that corporations will be restrained by
a Court of equity from a gross abuse of their powers,
when to the injury of individuals."    The natural use of
the land in question, it being a city lot, would be for
building or business purposes, at all events, for some
purpose entirely different from that to which it is applied
by the railroad company.    So far as the interests of the
owner are involved it may well be said in the language
of the authorities, that the trespass goes to the destruc-
tion of the property in the character in which it is
enjoyed.
    It remains to explain the nature and character of the
complainant's title.    It appears that on the twenty-

seventh day of May, 1885, Richard J. Capron and his wife, conveyed in fee to the trustees of the estate of James S. Armstrong, a tract of land in Baltimore County. Although the conveyance was in fee, it was really intended to be a security for a debt of a hundred and thirty-two thousand dollars due by Capron to the trustees.   On the seventeenth and twenty-fourth days of November, 1885, Capron and wife conveyed in fee several lots of land, then in Baltimore County, but now included in the City of Baltimore, to Lewis C. Black; it is admitted that it was intended that these lots should be additional security for Capron's debt to the Armstrong trustees.   On the twenty-eighth day of May, 1886, Black and wife conveyed these lots in fee to the Armstrong trustees.   They compose the tract described in the bill of complaint.   On the twenty-second day of May, 1889, Capron and wife conveyed this tract to John H. Miller, and the title thus conveyed is now vested in the Baltimore and Lehigh Railroad Company.   A paper appears in the record signed and sealed by Mrs. Capron, in which it is stated that Miller had paid of the purchase money, twelve thousand six hundred and thirty-three $\frac{33}{100}$ dollars, and that he had agreed to pay to Mrs. Celeste Hutton, a mortgage which she held on the property for twenty thousand dollars, and to pay before the first day of January, 1890, the sum of twenty-five thousand dollars to the Armstrong trustees.   The date of this mortgage is not stated.   On the twenty-fifth day of June, 1891, the Armstrong trustees conveyed this land to Mrs. Eliza Lee, the complainant, in consideration of the payment of twenty-five thousand dollars.   This purchase money was in part payment of the debt due by Capron to the trustees.   On the thirtieth of July, 1891, a release of the mortgage for a hundred and thirty-two thousand dollars was recorded; the parties, in this paper, styled the deed in fee a mortgage; because it was really

Baltimore Belt R. R. Co. *vs.* Lee.

intended as a security for a debt of that amount. The release is dated and was executed in September, 1885; but the evidence shows it was not delivered until the whole amount due was paid, and this was at the time it was recorded. This release makes no mention of the land conveyed by the Caprons to Black, and by Black and wife to the trustees; it refers only to the land conveyed by the Caprons to the trustees in May, 1885, and it reconveys to them the same land.

At the time that the Armstrong trustees made the conveyance to Mrs. Lee they held the legal title to the land. They conveyed this legal title to Mrs. Lee for twenty-five thousand dollars; she, having notice that the trustees held the property merely as a security for debt, must of course hold it in the same plight and condition, affected by the same equities. But nevertheless she holds the title with all its incidents and advantages until she is paid the money for which it is security. And as the legal title of the trustees was consummated by the deeds from Black and wife in May, 1886, her deed has priority over all conveyances made by Capron and wife subsequently to that date, she being invested with the same title which was held by the trustees. The deed was made to Black for the benefit of the trustees in November, 1885; but it is sufficient for the present purpose to confine our attention to the legal transfer from him and his wife in May, 1886. The deed from Capron and wife to Miller was executed in May, 1889, and this is the origin of the title under which the railroad company claims the title to use and occupy the land. Without questioning the right of Miller's assignees to call for a conveyance of the legal estate from Mrs. Lee when they pay her the amount for which she holds the lot as security; yet until they do so, they cannot have any right to the possession of the land as against her. Capron testifies that he gave Miller no

right to the possession, and he had none to give. Miller has paid only between twelve and thirteen thousand dollars of the purchase money for the estate in the land sold to him by Capron and wife. The trustees being the legal owners had the right of possession, and to this right Mrs. Lee succeeded. The title of Miller and his assignees is subsequent and subordinate to hers. They cannot have any right of possession against her; any use and occupation of the lot against her will is a trespass. And for the reasons already stated, we think that she is entitled to the protection of a Court of equity against the invasion of her rights under the circumstances shown in this case.

> *Order affirmed, with costs, and cause remanded.*

(Decided 17th March, 1892.)