THOMAS J. WALKER, JR., et al., Trustees
v. ACTING DIRECTOR, DEPARTMENT OF
FORESTS AND PARKS, etc.

[No. 35, September Term, 1978.]

*Decided January 19, 1979.*

358

*Michael P. Crocker*, with whom were *Piper & Marbury* on the brief, for appellants.

*Carl H. Lehmann, Special Attorney*, with whom were *Francis B. Burch, Attorney General*, and *Nolan H. Rogers, Assistant Attorney General*, on the brief, for appellee.

SMITH, J., delivered the opinion of the Court.

At issue in this appeal is the rate of interest which should be paid in a condemnation case when the State failed to satisfy a judgment prior to entering into possession of the land in question. We shall hold that the landowner was entitled to interest at the rate of 6% on the jury's verdict from the date of the judgment nisi until the award was paid into court.

Appellants, Thomas J. Walker, Jr., et al., Trustees (Walker), possessed land in Baltimore County which the State

desired to acquire "for the purposes of establishing, expanding and completing the State Park known as Gunpowder State Park and other public purposes . . . ." An earlier round in this bout was before the Court in *Acting Dir., Dep't of F. & P. v. Walker,* 271 Md. 711, 319 A. 2d 806 (1974) (*Walker I*). A condemnation action was brought by the State acting through the Department of Forests and Parks. The State did not act nor could it have acted under any of the so-called "quick take" statutes authorized by Maryland Constitution Art. III, §§ 40A-40D. Thus, under Maryland Code (1957, 1973 Repl. Vol.) Art. 21, § 12-103 (then applicable), title to the land is to be deemed taken "upon payment of the judgment and costs by the plaintiff pursuant to Subtitle U of the Maryland Rules." As our earlier case recounts, the State, without any statutory authority for its action and without tendering payment of any kind, secured an ex parte order granting it possession of the land in question prior to the return of the inquisition by the jury.

We recorded in *Walker I* that a motion to strike the order granting the State the right of entry was made by Walker "but not pressed when the jury brought in what [Walker] regarded as 'a fair compromise verdict.' " We further noted:

> The exact date does not clearly appear, but the parties are in agreement that at a time *subsequent* to the return of the jury's verdict the State moved in on this land. [*Id.* at 713-14 (emphasis added).]

Notwithstanding the fact that it had paid Walker no compensation, although it was in full possession of the land, the State appealed, apparently feeling aggrieved at the amount of the jury's award ($1,224,000). We held such action could not be permitted. We said in dismissing the appeal:

> We prefer to believe that when the State's agents entered upon the property of the appellees, felled the trees, graded the land and began construction, it was the intent of those agents of the State vested with responsibility relative to this project to do that which was legal, rather than that which was illegal, and,

therefore, it was intended to waive the right of appeal. [*Id.* at 720.]

Our comments and our dismissal of the appeal apparently failed to impress upon the officials of the State responsible for the condemnation action that the State was not permitted to treat its citizens as Walker was treated. We say that because even then the State did not pay the sum which the jury awarded. Judgment absolute on the inquisition was entered on December 20, 1973. We decided the case on May 31, 1974. Our mandate was received and filed by the Circuit Court for Baltimore County on July 5, 1974. It was not until July 25, 1974, three weeks less one day after the filing of our mandate, that the State paid the amount of the jury's award into the hands of the clerk of the circuit court. Even then it made no effort to pay interest on the award, a situation that continues even today, almost five years later.

Walker filed a motion for summary judgment in the condemnation proceeding in the circuit court claiming what was styled as "detention money" or "damages for delay." Interest on the amount of the award was sought from November 9, 1973, the date of the passage of the ex parte order permitting immediate entry. Ultimately, Walker was awarded $94,819.81 based upon the rate of return the State was receiving by way of interest on monies which it had invested during the period in question. The matter reached the Court of Special Appeals in *Acting Director v. Walker,* 39 Md. App. 298, 385 A. 2d 806 (1978). That court held Walker was entitled to no interest prior to the date of the jury's inquisition, but should be paid interest at the rate of 6% from that date to July 24, 1974, when the money was paid into court. It said the award for the period from July 24, 1974, to January 31, 1977, the date of the circuit court's order, "was also in error" since it "was based upon its erroneous assessment of the amount of damages for the loss of the use of money" for that period. Accordingly, the case was remanded to the Circuit Court for Baltimore County for entry of an order consistent with the opinion of the Court of Special Appeals. We granted Walker's petition for the writ of certiorari.

Walker presents here a multifaceted argument that interest should be paid at the rate of return the State was earning upon its investments from November 9, 1973, the date of passage of the order for entry, to the present time. In essence, Walker contends that interest is an integral part of the compensation to be paid for the taking of the property in question since the State entered into possession prior to payment, and that compensation for this deprivation of property should only be at the rate of return upon the State's own investments, which is substantially in excess of the legal interest of 6%.

There is a respectable body of law to the effect that when an owner's property is taken before he is paid compensation he is entitled to detention damages, often interest on the amount of the award. *See, e.g., Phelps v. United States,* 274 U. S. 341, 344, 47 S. Ct. 611, 71 L. Ed. 1083 (1927); *Seaboard Air Line Ry. v. United States,* 261 U. S. 299, 306, 43 S. Ct. 354, 67 L. Ed. 664 (1923); *United States v. Certain Land in City of St. Louis, Mo.,* 41 F. Supp. 809, 812 (E. D. Mo. 1941); *Milstar Mfg. Corp. v. Waterville Urban R. Auth.,* 351 A. 2d 538, 544 (Me. 1976); *Gitlin v. Pa. Turnpike Com.,* 384 Pa. 326, 331, 332, 121 A. 2d 79 (1956); A. Jahr, *Law of Eminent Domain* § 176 at 290-91 (1953); 2 J. Lewis, *Law of Eminent Domain* § 742 (3d ed. 1909); 3 J. Sackman, *Nichols The Law of Eminent Domain* § 8.63 (1977); 1 L. Orgel, *Valuation Under the Law of Eminent Domain* § 5 (2d ed. 1953); and Annot. 36 A.L.R.2d 337, 413, § 46 (1954). Two things must be borne in mind. (1) The statutory scheme in all states is not the same as that in Maryland. As we noted at the outset, absent invocation of the so-called "quick take" statutes authorized by Constitution Art. III, §§ 40A-40D, at the time here applicable Art. 21, § 12-103 provided that title to the land was deemed to be taken "upon payment of the judgment and costs by the plaintiff pursuant to Subtitle U of the Maryland Rules." It thus follows that the State has no right of entry in a conventional eminent domain proceeding until payment has been made. (2) No contention has been made by Walker that the legal rate of interest of 6% provided by Constitution Art. III, § 57 and specified by our cases as the rate to be paid

under Maryland Rule 642 on judgments is a constitutionally infirm rate.

The out-of-State cases cited in support of Walker's position here are, almost without exception, cases involving statutory schemes different from that of Maryland relative to eminent domain. The only agencies of this State (as differentiated from certain subdivisions) authorized to take land by condemnation without first having a jury determine the amount of damages are the State Roads Commission and the Washington Suburban Sanitary Commission. Constitution Art. III, §§ 40B-40D.[1] By Code (1977) § 8-331, Transportation Article, in the event a final award is in excess of the sum deposited in court under § 8-323 as a condition precedent to entry on the land by the State Roads Commission for the purpose of possession, then at the conclusion of the proceedings the Commission must pay the property owner interest on the excess from the date of payment under § 8-323 "at the rate of 6 percent a year." To like effect see Code (1974, 1978 Cum. Supp.) § 12-106 (c), Real Property Article, and *Hammond v. State Roads Comm.,* 241 Md. 514, 217 A. 2d 258 (1966). This sum is identical with that specified in 40 U.S.C. § 258a, the Declaration of Taking Act, for payment under similar circumstances by the Federal government.

This case establishes once again that "there is nothing new under the sun."[2] *Harness v. Chesapeake & O. Canal Co.,* 1 Md. Ch. 248 (1848), is factually similar, although there was no argument in that case as to the rate of interest which should be paid. There an Allegany County jury returned an inquisition as to the amount of damages for land being condemned. The condemnor entered into possession of the land after the inquisition was ratified. It made excavations upon it, but failed to pay the amount of the inquisition. The

---

1. By Constitutional amendment approved by the people at the 1978 general election § 40D applicable to Montgomery County has now been repealed.

2. *See* Ecclesiastes 1:9 (RSV) to that effect, our citation of that statement in Board of Education v. Hughes, 271 Md. 335, 339, 317 A. 2d 485 (1974), and the statement attributed to Mlle. Bertin, Marie Antoinette's milliner, about 1785, "There is nothing new except what has been forgotten."

chancellor said, "[T]he obligation to pay interest would seem to follow as of course, unless there are other circumstances exonerating them from the duty." *Id.* at 260-61. He found none. We should point out that judgments at law have not always carried interest until paid. Judge Bowie said for our predecessors in *City Pass. R. W. Co. v. Sewell,* 37 Md. 443 (1873):

> It is established ... that judgments in this State did not carry interest at common law, but were made to do so by comparatively recent Acts of Assembly. Chief Justice Taney, in *Perkins v. Fourniquet,* 14 How. [(55 U. S.) 328,] 331 [(1852)], says: "Upon common law principles a judgment does not carry interest." *Preston v. West,* 4 H. & McH. 70 [(General Court 1797)]; Harris' Entries, 89, 149; Acts of 1802, ch. 101, 1809, ch. 153. [*Id.* at 455.]

We point out that Walker had legal remedies available to him which, by invoking summary judgment proceedings, could quickly have terminated the State's possession of the property in question until it paid the award. We suspect that had Walker moved with one of those remedies when the first tree was felled or the first spadeful of dirt moved the State would have moved equally promptly to pay. In *Walker I* we said:

> There are a number of Maryland cases which hold that an injunction will issue to prevent the entry upon and taking of land without just compensation being *first* paid, or tendered, to the party entitled. *See, e.g., Baltimore Belt R.R. v. Lee,* 75 Md. 596, 604, 23 A. 901 (1892); *Amer. Tel. & Tel. Co. v. Pearce,* 71 Md. 535, 18 A. 910, 7 L.R.A. 200 (1889); *Piedmont & C.R.R. v. Speelman,* 67 Md. 260, 10 A. 77 (1887); *New Cent. Co. v. George's Creek Co.,* 37 Md. 537, 566 (1873); *Mayor of Frederick v. Groshon,* 30 Md. 436, 445-46, 96 Am. Dec. 591 (1869); and *Western Md. R.R. v. Owings,* 15 Md. 199, 204, 74 Am. Dec. 563 (1860). [*Id.* at 717 (emphasis in original).]

In *Calvert Associates v. Department,* 277 Md. 372, 378, 357 A. 2d 839 (1976), we referred to *Weyler v. Gibson,* 110 Md. 636, 73 A. 261 (1909), in discussing sovereign immunity. In *Weyler* the Court permitted an action in ejectment against public officials who had improperly taken land for the Maryland Penitentiary. Judge Burke said for the Court there:

It is conceded that no suit can be brought against the State, without its consent. This immunity of the State from suit rests upon grounds of public policy, and is too firmly fixed in our law to be questioned. But it would be strange indeed, in the face of the solemn constitutional guarantees, which place private property among the fundamental and indestructible rights of the citizen, if this principle could be extended and applied so as to preclude him from prosecuting an action of ejectment against a State Official unjustly and wrongfully withholding property, by the mere fact that he was holding it for the State and for State uses. [*Id.* at 654.]

Long ago our predecessors held that entry of a judgment in an eminent domain proceeding covered all damages which had accrued up to that time. *See Baltimore & P. R.R. v. Magruder,* 34 Md. 79, 87-88, 6 Am. Rep. 310 (1871), and *Chesapeake & O. Canal Co. v. Grove,* 11 G. & J. 398, 404 (1841). This lends force to the statement by Judge Davidson for the Court of Special Appeals in disposing of the claim for interest from the date of the passage of the ex parte order for entry to the date of the jury's award:

A decision of a trial court which finally determines the rights of the parties becomes the "law of the case" when no appeal is taken. Such a decision also is binding on the courts and litigants in further proceedings in the same case. Neither questions which were decided nor questions which could have been raised and decided in the trial court or on appeal can be relitigated in the same case.

Maryland Rules, Subtitle U, determine the procedure for . . . condemnation proceedings.

Maryland Rule U16 b provides, among other things, that in a condemnation proceeding tried by a jury, the jury shall

> "value justly and impartially the damages which the defendant will sustain by the taking."

Maryland Rule U19 provides in pertinent part:

> "a. . . . The trier of fact shall render a special verdict in the form of an inquisition.
>
> * * *
>
> "g. . . . The inquisition shall set forth the amount of damages, if any, to which each defendant or class of defendants is entitled or, if the court so orders, the total amount of damages awarded or both."

These rules establish that in condemnation proceedings all questions relating to the amount of just compensation must be decided by the jury. Thus, any claim that the owners [in a case not brought under "quick take" powers] were entitled to additional damages because the State's delay in payment deprived them of the use of money due them on 9 November 1973 could have been raised and decided in the trial court. [39 Md. App. at 302 (footnotes omitted).] [3]

It must be noted that it was only with the acquiescence of Walker that the State took actual possession of this land without payment of the sum returned by the jury. We say this because, as we have already pointed out, at argument before us in *Walker I* the parties agreed that it was "at a time

---

3. Under Code (1974, 1978 Cum. Supp.), § 12-106 (c), Real Property Article, and its predecessor, Code (1957, 1973 Repl. Vol.) Art. 21, § 12-107 (c), in any proceeding for condemnation "under Article III of the Constitution . . . or any amendment to it" the condemnor is required to "pay interest at the rate of 6 percent per annum on any difference between the amount of money initially paid into court for the use of the defendant and the jury award as stated in the inquisition, from the date the money was paid into court to the date of the inquisition or final judgment, whichever date is later." Thus, detention damages or interest from the date money is paid into court is not a matter for consideration by the jury in a "quick take" case.

subsequent to the return of the jury's verdict [that] the State moved in on this land" and we there recorded, "A motion to strike [the ex parte] order [granting possession to the State prior to the inquisition] was filed by [Walker], but not pressed when the jury brought in what [Walker] regarded as 'a fair compromise verdict.'" It no doubt was because Walker was satisfied with the amount of the verdict that no appeal was taken. It is far too late now for a contention on the part of Walker that the jury improperly determined damages. Such a contention would of necessity have to be based upon an erroneous jury instruction or some other impropriety at the trial. The time for appeal has long since passed. Walker's failure to appeal and failure to press the original motion to strike the ex parte order for entry brings to mind the observation in *Van Royen v. Lacey,* 266 Md. 649, 296 A. 2d 426 (1972):

> [E]stoppel by admission or by pleading has long been recognized in this State, *Stone v. Stone,* 230 Md. 248, 253, 186 A. 2d 590 (1962); *Scanlon v. Walshe,* 81 Md. 118, 132, 31 A. 498 (1895); *Mobberly v. Mobberly,* 60 Md. 376, 379 (1883); *Hall v. McCann,* 51 Md. 345, 351 (1879); and *Edes v. Garey,* 46 Md. 24, 41 (1877). In the latter case the Court of Exchequer in *Cave v. Mills,* 7 H. & W. 927, was quoted as saying, "A man shall not be allowed to blow hot and cold, to claim at one time and deny at another." [*Id.* at 651-52.]

In *Lore v. Board of Public Works,* 277 Md. 356, 360-61, 354 A. 2d 812 (1976), we specifically held "that by legislative mandate interest on the jury's inquisition award" in a condemnation case runs from the date of the entry of a judgment nisi until it is satisfied, becoming a part of the compensation required to be paid for the taking. In *Northwestern N. Ins. v. Wetherall,* 272 Md. 642, 658, 325 A. 2d 869 (1974), we said that the requirement of Rule 642 that a "judgment on verdict shall be so entered as to carry interest from the date on which the verdict was rendered" has been "uniformly inferred in this State to be [at] the legal rate. *Paape v. Grimes,* 256 Md. 490, 494, 260 A. 2d 644 (1970)." Accordingly, we hold that Walker was entitled to interest at

the rate of 6% per annum on the amount of the jury's award from the date of the entry of the judgment nisi to the date of the deposit of this sum with the clerk of the circuit court, at which time it became available to Walker. The award by the Court of Special Appeals of interest beyond that date is in error and would be modified but for the fact that the State has filed no petition for certiorari. Allowance of interest on the unpaid interest amounts to compound interest on a judgment. We are acquainted with no rule of law in this State which would permit such a claim. We are not without sympathy for Walker in the State's unusual delay here. As we have already pointed out, however, Walker possessed the tools to quickly abort the State's entry without payment of the award.

> *Judgment of the Court of Special Appeals affirmed; case remanded to it for further remand to the Circuit Court for Baltimore County for entry of an order consistent with this opinion; costs to be paid by appellee.*